**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry WALKER, Defendant–Appellant.**

**No. 89–30113.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1990.

Decided Sept. 25, 1990.

Walter Share, Seattle, Wash., for defendant-appellant.

Richard A. Jones, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before FARRIS, PREGERSON and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Larry Walker appeals his conviction on charges of conspiracy to distribute lysergic acid diethylamide (LSD) and aiding and abetting the distribution of over ten grams of a mixture containing LSD. Walker challenges the jury instructions and the district court's refusal to appoint substitute counsel for him. We find that Walker was improperly denied substitute counsel and therefore reverse and remand for a new trial.

FACTS AND PROCEDURAL HISTORY

Roger Wilcox was the subject of a Drug Enforcement Agency (DEA) investigation into sales of LSD in the summer of 1987. As part of this investigation, a confidential DEA informant arranged to purchase quantities of LSD from Wilcox. DEA agents taped telephone conversations between Wilcox and his source for the drug, whom Wilcox later identified as Walker. The informant and an undercover agent also received telephone calls from a man in connection with the drug sales, whose voice Wilcox also identified as Walker's.

During the course of their surveillance of Wilcox, the agents observed him pick up quantities of LSD at Walker's residence. They also followed Wilcox and a man identified as Walker when they drove to Seattle–Tacoma International Airport in Walker's car. At the airport, the agents observed the man arrange to wire money, which the agents believed was being sent to a major source in California as part of the drug transaction negotiated with the informant.

Following two separate sales of LSD to the informant, Wilcox was arrested and agreed to plead guilty to lesser charges in exchange for his cooperation and testimony against Walker. Walker was arrested and charged with one count of conspiracy to distribute LSD in violation of 21 U.S.C. § 846 (1988), and two counts of distribution and aiding and abetting the distribution of over ten grams of a mixture containing LSD in violation of *id.* § 841(a)(1) & (b)(1)(A) and 18 U.S.C. § 2 (1988).

Walker was represented by a public defender. In a letter dated January 13, 1989, one week before Walker's trial was scheduled to begin, Walker wrote to the district

judge and requested that another attorney be appointed to represent him. He listed several witnesses he believed were crucial to his defense and explained that he had told his present attorney about these witnesses, but she had failed to contact them. He believed that she was doing "as little as possible and only [was] planning on putting on the pretext of a defense, instead of a proper and real one based on facts that are available and creditable witnesses that are available."

On Friday, January 20, the day trial was to begin, Walker told the court that he had sent a letter requesting new counsel and moved to have different counsel appointed to represent him. After eliciting from Walker that he was not challenging his present attorney's legal competence, the court denied his motion. His attorney then stated that she and Walker were experiencing irreconcilable differences that were preventing her from representing Walker, and moved to withdraw. The court found that she was competent and denied the motion.

The following Monday, January 23, the district judge stated that he had read Walker's letter for the first time after court had adjourned on Friday. The court reiterated its denial of Walker's motion for substitute counsel, but acknowledged that Walker had a right to call witnesses in his defense. The court noted, however, that Walker's request posed procedural difficulties regarding who would question the witnesses Walker wanted to call and when that questioning would take place. Without resolving these difficulties, the court had the letter filed and proceeded with trial.

The next day, the prosecution rested its case. The defense, per Walker's attorney, rested immediately thereafter, without any further reference to the witnesses Walker sought to call and without calling any witnesses for the defense. The jury convicted Walker on the conspiracy count and on one of the two counts of distribution and aiding and abetting the distribution of more than ten grams of LSD mixture. He was sentenced to the statutory minimum of ten years on each count to be served concur-

rently, five years of supervised release, and a fine of $5,000.

## DISCUSSION

### I. Refusal to Appoint Substitute Counsel

■ We review the district court's refusal to substitute counsel for abuse of discretion. *United States v. Rogers*, 769 F.2d 1418, 1423 (9th Cir.1985). We consider three factors "when reviewing the denial of a motion to substitute counsel: (1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.*

#### Timeliness

■ The district court did not address Walker's request for new counsel until the day trial was to begin. "It is within the trial judge's discretion to deny a motion to substitute made during or on the eve of trial if the substitution would require a continuance." *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir.1986) (citing *United States v. Williams*, 594 F.2d 1258, 1260–61 (9th Cir.1979)). Here, however, Walker requested new counsel in a letter dated one week before trial began. The court did not read this letter until after its initial ruling on Walker's motion, apparently because the letter was addressed to the district judge personally, rather than to the court. Thus, although the motion was not formally made until the morning of the first day of trial, Walker attempted to make his motion before trial began.

Moreover, the district court did not discuss the lack of timeliness or any potential delay posed by Walker's motion, nor did it indicate that timeliness was a consideration underlying its denial of the motion. Rather, the court denied the motion after concluding that Walker's present counsel was competent. The government raised the issue of timeliness when the court discussed Walker's letter the following Monday, but the government stated that it did not object to a continuance so that Walker could con-

tact the witnesses and arrange to have them testify. Again, however, the court did not indicate that timing or delay affected its decision to deny the motion. The questionable timeliness of Walker's motion did not underlie the district court's exercise of its discretion to deny the motion, and thus we do not find it dispositive of this issue.

*Adequacy of Inquiry*

■ Under the second factor, we must assess the adequacy of the district court's inquiry into the reasons Walker requested substitute counsel. The court's inquiry consisted of the following exchange:

THE COURT: Mr. Walker.

THE DEFENDANT: Yes, Your Honor, I would like to make a motion to have another attorney appointed for me.

THE COURT: Why?

THE DEFENDANT: Well, it's just that she hasn't done the job for me that I expected to have done. There's no witnesses. I sent you a letter.

Thank you, Your Honor.

THE COURT: Is there something that you wish to advise the Court upon that you have information that she might not be competent to represent you? Not whether she agrees with you or that she can't change the facts of your case, sir. I'm talking about her legal competency at this time.

THE DEFENDANT: Well, I'm not arguing her legal competency. I—there's just some things that were said and I— I don't know how, you know, how far I should go into it, you know.

THE COURT: Well, I—I see no reason to either dismiss upon your motion or let her withdraw. And she hasn't tried to do that, so she will represent you.

We recognize that the nature of our review requires that we accord the district court sufficient latitude to conduct the proper inquiry under the circumstances of each case. *See, e.g., McClendon,* 782 F.2d at 789 ("While the trial judge might have made a more thorough inquiry ..., McClendon's description of the problem and the judge's own observations provided a sufficient basis for reaching an informed deci-sion."). Here, however, the district court made virtually no attempt to discover the causes underlying Walker's dissatisfaction with his attorney.

Moreover, the focus of the court's limited inquiry was on the competence of Walker's counsel. Our previous decisions demonstrate that the proper focus of such an inquiry is on the nature and extent of the *conflict* between defendant and counsel, not on whether counsel is legally *competent. See, e.g., id.* (assessing the adequacy of the district judge's "inquiry into the substance of McClendon's alleged conflict with counsel"). While the district court may have believed that the legal competence of Walker's attorney was the basis of his complaint and tailored its inquiry accordingly, such a belief only would demonstrate the inadequacy of the court's inquiry into the true cause of Walker's dissatisfaction. We find, therefore, that the district court's inquiry into Walker's complaint was inadequate.

*Extent of Conflict*

■ The third factor we must consider in reviewing the district court's denial of Walker's motion is whether the conflict between Walker and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. After the district court concluded its inquiry with Walker, his appointed counsel engaged in the following exchange with the court:

[Counsel]: Your Honor, if I may just add, Mr. Walker, I should note for the record, is no longer—has refused to speak to me about the case or assist me in the preparation of his case since he's decided that he wants a new attorney.

And specifically, I have asked him specific questions which due to the attorney-client privilege I can't reveal to the Court at this time. However, I've asked him specific questions concerning the case which I needed answers to in order to prepare. He has refused to give me those, and so therefore I feel I must concur and ask the Court to allow me to withdraw.

THE COURT: I see no reason whatsoever either presented by you or the defendant that you are not capable, fully capable and competent to represent him.

[COUNSEL]: I would just note, Your Honor, that I do believe that there is, given his refusal to confer with me, there is a [*sic*] irreconcilable difference that does prevent me from representing him at this time.

THE COURT: That's inherent in the relationship, isn't it?

[COUNSEL]: Your Honor, it's difficult to prepare when your client will not assist you in his defense.

THE COURT: What makes you think he would assist anybody else? We would be back here again with the same argument.

[COUNSEL]: No, that's really not it, Your Honor. I would appreciate the consideration that I'm—you know, if I could just speak to another attorney to find out some legal things that happened here that—that made me very concerned.

THE COURT: The purpose of this hearing—case, Mr. Walker, you pleaded not guilty, which entitles you to a jury trial, and the matter's going to be presented to the jury as to innocence or guilt in a very few moments.

So if that's the motion, counsel, your motion is denied along with your client [*sic*].

Walker "made a prima facie showing of an irreconcilable conflict between himself and his appointed attorney. These contentions were not disputed, yet the Court summarily denied the motion." *Williams*, 594 F.2d at 1260. The result of this denial was that Walker "was forced into a trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not ... communicate. Thus, the attorney was understandably deprived of the power to present any adequate defense in [Walker's] behalf." *Brown v. Craven*, 424 F.2d 1166, 1169 (9th Cir.1970).

Nor was Walker's dispute with his counsel based on frivolous or manipulative grounds, as the district court seems to have assumed. The theory of the defense was that Walker's former roommate Lyle was actually Wilcox's source for the drugs. Lyle resembles Walker (both men are six feet tall and weigh approximately 240 pounds). Early in their investigation, one of the DEA agents believed that Lyle might be the source of the drugs. Moreover, prior to his arrest, Wilcox told two undercover DEA agents that Lyle was his drug source.

In his letter to the judge requesting new counsel, Walker stated a desire to testify on his own behalf and alleged that his attorney had failed to contact Lyle. The letter also stated that Walker's attorney had not contacted police officers and store detectives who would testify that Lyle posed as Walker and identified himself as Walker when he previously had been arrested, nor had she spoken with persons who allegedly had purchased drugs from Lyle. Thus, Walker's lack of confidence in his attorney arose out of a disagreement over trial preparation and potential witnesses, rather than any general unreasonableness or manufactured discontent.

As a result of this conflict, Walker did not testify, and his trial counsel mounted only a limited, if not perfunctory, defense, briefly cross-examining government witnesses, calling no witnesses for the defense, and giving only a brief closing argument. As in *Brown*, however,

> [w]e do not criticize the defense attorney. Since [Walker] would not communicate with [her], it is understandable that the attorney performed [her] duty under the gravest handicap. We think, however, that to compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever.

424 F.2d at 1170 (footnote omitted). Moreover, the government's case relied primarily on Wilcox's testimony and identification of Walker's voice, supplemented by DEA agents' surveillance of Wilcox when he picked up drugs from Walker's residence

and when he drove with a man identified as Walker in Walker's car to the airport, where the man arranged to wire money. Given the suspicion inherent in accomplice testimony and the circumstantial nature of the corroborating evidence, Walker's testimony and participation in his defense could have affected the outcome of the trial.[1] Under these circumstances, therefore, we find that the conflict between Walker and his attorney resulted in a total lack of communication preventing Walker from presenting an adequate defense.

■ Reviewing the three factors, we find that (1) Walker attempted to raise his motion for substitute counsel one week prior to trial, his motion was not heard by the court until the day of trial, and timeliness was not a consideration in the district court's decision; (2) the court's inquiry into Walker's complaint was inadequate; and (3) an irreconcilable conflict arose between Walker and his attorney which resulted in a total lack of communication preventing an adequate defense. We believe the balance of these factors weighs in Walker's favor and therefore conclude that the district court abused its discretion by denying Walker's motion for substitute counsel, thus depriving him of his constitutionally guaranteed right to effective assistance of counsel. *See Williams*, 594 F.2d at 1261. His convictions are reversed, and the case is remanded to the district court for a new trial.

## II. Section 841 Claims

Walker also challenges the propriety of the district court's jury instructions.[2] Specifically, he claims that the court improperly refused to instruct the jury on the "lesser included offense" of distributing less than ten grams of LSD mixture and that

Walker could be convicted of aiding and abetting distribution of more than ten grams only if the jury found that he knew or intended that Wilcox would distribute that amount of LSD mixture. Having reversed Walker's convictions on other grounds, we ordinarily would not reach these claims. Because we remand the case for a new trial, however, the district court once again will be faced with these issues, as will we if Walker is convicted and appeals. We therefore address them now.

■ We review the district court's denial of a lesser included offense instruction for abuse of discretion. *United States v. Linn*, 880 F.2d 209, 217 (9th Cir.1989). "Jury instructions are considered as a whole to determine if they are misleading or inadequate. However, whether a jury instruction misstated elements of a statutory crime is a question of law and is reviewed de novo." *United States v. Spillone*, 879 F.2d 514, 525 (9th Cir.1989) (citation omitted). Before Walker is entitled to a lesser included offense instruction, he must (1) identify the lesser included offense, and (2) demonstrate that a rational jury could find him guilty of the lesser included offense but not the greater. *Linn*, 880 F.2d at 218.

Under section 841,

it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a). Under the heading *"Penalties,"* the statute further provides,

---

**1.** We find this all the more likely in light of the jury's acquittal of Walker on one of the two counts of distribution and aiding and abetting distribution of LSD.

**2.** In addition, Walker challenges the sufficiency of the evidence, and claims that section 841's mandatory minimum sentencing is unconstitutional as violative of the eighth amendment, due process, and equal protection. Our reversal of Walker's convictions, however, renders his sufficiency claim moot. Similarly, until Walker

properly is convicted and sentenced under section 841, we cannot determine whether application of that statute violates his constitutional rights. We note, however, that we have recently rejected constitutional claims which were virtually identical to those raised by Walker. *See United States v. Klein*, 860 F.2d 1489, 1495–1501 (9th Cir.1988); *United States v. Savinovich*, 845 F.2d 834, 838–40 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

In the case of a violation of subsection (a) of this section involving—

. . . . .

(v) 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

. . . . .

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life

. . . .

*Id.* § 841(b)(1)(A). Violations involving one gram or more of an LSD mixture have a statutory minimum of five years imprisonment. *Id.* § 841(b)(1)(B).

■ Because distribution of less than ten grams of LSD carries a less severe statutory penalty than distribution of more than ten grams, Walker maintains that the district court incorrectly refused to give the jury an instruction on the "lesser" offense of aiding and abetting the distribution of less than ten grams. He argues that if he is found to have aided and abetted Wilcox's distribution of LSD, he can only be held responsible for the one-gram bag he allegedly supplied Wilcox, not the sixteen grams that resulted when Wilcox diluted the drug. Additionally, Walker claims that before he can be convicted of aiding and abetting, he must be found to have known or intended that Wilcox would distribute that amount.

Walker's arguments, however, "presuppose[ ] that knowledge of the amount of [LSD mixture] is an element of the aggravated offense. We [have held] that it is not. Section 841(b)[ (1) ] is merely a penalty provision, and its provisions are 'wholly separate' from the definition of unlawful acts included in 21 U.S.C. § 841(a)." *United States v. Normandeau*, 800 F.2d 953, 956 (9th Cir.1986) (quoting *United States v. Alvarez*, 735 F.2d 461, 467 (11th Cir.1984)); *accord United States v. Klein*, 860 F.2d 1489, 1494–95 (9th Cir.1988). The district court nevertheless instructed the jury that

it could convict Walker of the distribution charges only if it found beyond a reasonable doubt "that the amount of the mixture and substance containing LSD which the defendant delivered was in excess of ten grams or more."

■ A defendant is entitled to a lesser included offense instruction when "the elements of the lesser offense are a subset of the charged offense" and a factual basis supports such an instruction. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 1450 & n. 8, 103 L.Ed.2d 734 (1989); *see United States v. Komisaruk*, 885 F.2d 490, 497–98 (9th Cir.1989). The rationale for this entitlement is that:

> where the jury suspects that the defendant is plainly guilty of *some* offense, but one of the elements of the charged offense remains in doubt, in the absence of a lesser offense instruction, the jury will likely fail to give full effect to the reasonable doubt standard, resolving its doubts in favor of conviction. The availability of a lesser included offense instruction protects the defendant from such improper conviction.

*Schmuck*, 109 S.Ct. at 1451 n. 9 (citing *Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973)) (citation omitted).

We believe that rationale may apply in these circumstances.[3] Once the jury is required to decide whether ten grams of LSD mixture were distributed, for the reasons set forth in *Schmuck* it may be necessary to instruct that the jury may find a lesser amount was distributed, if a factual basis supports such an instruction. Here, however, no factual basis supported an instruction on distributing less than ten grams of LSD mixture. Walker does not dispute the fact that Wilcox distributed sixteen grams of LSD mixture. As an aider and abettor, Walker would be responsible for the entire mixture distributed and would be guilty as a principal, even if he supplied only the one-gram bag of LSD which was diluted, according to Wilcox, to make the drug

---

**3.** We do not reach the issue of whether the court was required to have the jury decide the quantity of drugs distributed when, as here, the indictment specified that over ten grams were distributed. In this case the issue was left for the jury to decide.

"workable."[4] *See* 18 U.S.C. § 2(a) (1988). "Through [his] involvement in the illegal transaction, [Walker] assumed the risk of enhanced penalties if the government could show that [his] offense involved more than [ten grams of LSD mixture]." *Normandeau,* 800 F.2d at 956. The district court, therefore, did not abuse its discretion by refusing to give Walker's proposed lesser included offense instruction.

■ Similarly, Walker was not entitled to an instruction that he must have known or intended that Wilcox would dilute the LSD before Walker can be convicted of aiding and abetting distribution of more than ten grams of LSD. Aiders and abettors are liable as principals when the proof against them encompasses the same elements that would be required to convict the principal, but "proof that an accused knew how much [LSD mixture] was involved is not an element of a section 841(a) offense." *Id.* Walker, therefore, need not have known or intended that Wilcox would dilute the LSD to be convicted of aiding and abetting the distribution of the sixteen-gram mixture.

## CONCLUSION

Although the district court did not abuse its discretion by refusing to give Walker's proposed jury instructions, it abused its discretion when it denied Walker's motion for substitute counsel. Walker's convictions, therefore, are REVERSED, and the case is REMANDED to the district court for a new trial.

FARRIS, Circuit Judge, dissenting:

I dissent.

---

**4.** According to the government chemist who testified as an expert witness, one dosage unit of LSD, *i.e.,* the amount necessary to give an effect, is 25 micrograms or 25 millionths of one gram. Pure LSD, therefore, is diluted with another substance to make these dosage units more manageable.