956 F.2d 279
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Antonio GRADO, Defendant-Appellant.
 No. 91-2042.
 United States Court of Appeals, Tenth Circuit.
 Feb. 26, 1992.
 
 Before STEPHEN H. ANDERSON and EBEL, Circuit Judges, and SAFFELS, District Judge.*
 ORDER AND JUDGMENT**
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8(c) and 27.1.2. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Jose Antonio Grado appeals from his conviction of illegally reentering the United States after having been deported, in violation of 8 U.S.C. § 1326. Grado argues that: (1) the district court abused its discretion in denying his motion to substitute counsel and (2) the district court erred by applying Sentencing Guideline § 2L1.2 in a manner that violated the Ex Post Facto Clause of Art. I, Sec. 9 of the U.S. Constitution. See United States Sentencing Commission, Guidelines Manual (Nov. 1989) [hereinafter U.S.S.G.]. We affirm.
 
 
 3
 On August 22, 1989, Grado, a Mexican citizen, was deported to Mexico. On July 19, 1990, a Senior Border Patrol Agent of the Immigration and Naturalization Service (INS) spotted Grado in Deming, New Mexico. The Agent asked Grado if he had immigration documents allowing him to remain in the country legally, and Grado responded that he did not. From prior experience, the agent knew that Grado was a Mexican national and arranged for an immigration hold to be placed so that Grado would remain in the United States and a criminal prosecution could be initiated.
 
 
 4
 Grado was charged with being "found" in the United States in violation of 8 U.S.C. § 1326.[1] Following a one day jury trial, Grado was convicted of the charged offense. The district court sentenced Grado to two years imprisonment followed by one year of supervised release, and a $50 special assessment.
 
 I. Denial of Motion to Substitute Counsel
 
 5
 After the petit jury had been selected, but before it had been sworn, Grado's counsel notified the court that he understood from the Spanish-language interpreter that Grado desired new counsel. R. Vol. II. at 7. The court excused the jury and sought the views of Grado, his counsel, and the prosecutor in the case. Through the interpreter, Grado first indicated that he wanted a new attorney because he and his wife wanted to take the stand and testify and that his appointed counsel had "made some mistakes" such as not informing him that there would be a jury trial and not arranging an appointment for him with the U.S. Consulate. Id. at 8-9. Under questioning from the district judge, Grado's counsel stated that Grado and his wife could take the stand if they wished, and that Mrs. Grado was present at counsel's request for that purpose. Id. at 10. Counsel also replied that Grado had not previously expressed a desire to change counsel. Id.
 
 The following colloquy then occurred:
 
 6
 THE COURT: Mr. Grado--no, no, it's fine. Do you want to go ahead with Mr. Binford and have him put you on the stand?
 
 
 7
 MR. GRADO: I prefer to get another lawyer.
 
 
 8
 THE COURT: Mr. Grado, isn't it--you have already been here. There was jury selection. Why didn't you tell me this before we started?
 
 
 9
 MR. GRADO: Because I thought I could, by law, have 90 days with my wife.
 
 
 10
 THE COURT: Have you told Mr. Binford before today that you wanted another lawyer?
 
 
 11
 MR. GRADO: I had told his secretary, yes.
 
 
 12
 MR. BINFORD: This is the first I have heard of it, your Honor. ....
 
 
 13
 THE COURT: Mr. Grado do you have any other reason for wanting to change lawyers here, other than that you thought you had 90 days to go to trial?
 
 
 14
 MR. GRADO: No, Sir.
 
 
 15
 THE COURT: Very well. The motion for new counsel will be denied.
 
 
 16
 I frankly don't give any credibility, Mr. Grado, to your stated reasons for wanting to change counsel. You sat through jury selection here this morning, and you didn't bring this up until after the jury was selected. The case is ready to go to trial. It's ready to go to trial, and I will not appoint another lawyer. If you want to represent yourself, you can do that, but I will ask Mr. Binford to advise you. If you want him to represent you, I will continue his appointment.
 
 
 17
 MR. GRADO: No.
 
 
 18
 THE COURT: That's fine. You are still the lawyer in the case, Mr. Binford.
 
 
 19
 Id. 10-13.
 
 
 20
 " 'To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.' " United States v. Padilla, 819 F.2d 952, 955 (10th Cir.1987) (quoting McKee v. Harris, 649 F.2d 927, 931 (2nd Cir.1981)). There is no absolute right to counsel of one's choice, United States v. Peister, 631 F.2d 658, 661 (10th Cir.1980), and the Sixth Amendment provides no right to counsel blindly following a defendant's instructions, Padilla, 819 F.2d at 956 or a "meaningful" attorney-client relationship. Morris v. Slappy, 461 U.S. 1, 13-14 (1983).
 
 
 21
 We review the district court's refusal to substitute counsel for abuse of discretion. United States v. Walker, 915 F.2d 480, 482 (9th Cir.1990). Both parties acknowledge that standard and analyze the issue under three factors: (1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.[2]
 
 
 22
 Grado's arguments are unpersuasive under each of the three factors. He also fails to establish good cause as is required in this circuit. Padilla, at 955. His underlying motivation for seeking substitute counsel is revealed from the colloquy quoted above. Delay for delay's sake does not constitute good cause even if premised on a mistaken, but good faith, belief that the moving party is somehow entitled to a delay. We find no reason to disturb the decision of the district court.
 
 II. Sentencing Under U.S.S.G. § 2L1.2
 
 23
 Grado's Ex Post Facto Clause argument turns on his interpretation of when the conduct underlying his offense occurred. He states that he actually reentered the United States on the same date of his deportation, August 22, 1989. R. Vol. III at 3, p 4. Grado argues that his illegal conduct was complete at that time since "[t]he crime of unlawfully reentering the United States is complete upon reentry, although not discoverable until the defendant is found in the United States." Appellant's Reply Br. at 4.
 
 
 24
 It is uncontested that United States Sentencing Guideline § 2L1.2[3] was amended effective November 1, 1989. These amendments, not in effect on August 22, 1989, the date Grado asserts he reentered the United States, but in effect on July 19, 1990 when INS agents "found" Grado in the United States, increased the base offense level from 6 to 8 and added subsection (b)(1) which provided an increase for aliens who had been previously deported after conviction of a felony other than an immigration law violation. Therefore, Grado asserts, the imposition of the November 1989 Guideline provisions violates the Ex Post Facto Clause by inflicting on Grado a harsher punishment than the law permitted when the crime was committed. Grado notes correctly that the Ex Post Facto Clause prohibits retroactive application of a changed Guideline if the change disadvantages the defendant. United States v. Underwood, 938 F.2d 1086, 1090 (10th Cir.1991); see Miller v. Florida, 482 U.S. 423, 430 (1987).
 
 
 25
 However, Grado's Ex Post Facto Clause argument fails since we conclude that his criminal conduct occurred in July 1990 and not August 1989 as he asserts. While an issue of first impression in this circuit, two other circuits have rejected an argument similar to Grado's as a matter of statutory construction. See United States v. Canals-Jimenez, 943 F.2d 1284 (11th Cir.1991); United States v. DiSantillo, 615 F.2d 128 (3rd Cir.1980). These circuits conclude that each of the separate activities enumerated in § 1326(a)(2): "enters, attempts to enter, or is at any time found in, the United States" has a distinct meaning.
 
 
 26
 Grado attempts to conflate the meanings of "enters" the U.S. and "is found in" the U.S. so that they are identical. We do not agree. Even assuming, as Grado asserts, that he entered the United States in August 1989, he was not discovered or found in the United States until July 1990. The indictment charged Grado with being "found in" the United States, not "entering" or "attempting to enter." The criminal conduct for which Grado was sentenced and convicted, being found illegally in the United States, occurred in July 1990. Thus, the Sentencing Guideline in effect at that time applies.
 
 
 27
 Lurking, implicitly, in Grado's briefs is an ineffective assistance of counsel argument. As a general rule, such arguments must be raised on collateral review. Beaulieu v. United States, 930 F.2d 805, 806 (10th Cir.1991). Most circuits follow the general rule that "a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court." Id. at 807 (citation omitted). There is nothing in this record to support such a claim.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In relevant part, § 1326, Reentry of deported alien; criminal penalties for reentry of certain deported aliens, states:
 (a) Subject to subsection (b) of this section, any alien who--
 (1) has been arrested and deported or excluded and deported, and thereafter
 (2) enters, attempts to enter, or is at any time found in, the United States ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.
 
 
 [2]
 Four circuits have adopted these "factors" as the analytical framework for reviewing denials of a motion to substitute counsel. United States v. Walker, 915 F.2d 480, 482 (9th Cir.1990); United States v. Allen, 789 F.2d 90, 92 (1st Cir.1986); United States v. Gallop, 838 F.2d 105, 108 (4th Cir.1988); United States v. Iles, 906 F.2d 1122, 1130 n. 8 (6th Cir.1990)
 
 
 [3]
 As amended, U.S.S.G. § 2L1.2, covering Unlawfully Entering or Remaining in the United States provides in relevant part:
 (a) Base Offense Level: 8
 (b) Specific Offense Characteristic
 (1) If the defendant previously was deported after sustaining a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.
 This section was subsequently amended effective November 1, 1991, see Appendix C, amendment 375, but that change does not effect our analysis.