993 F.2d 884
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emilio BRAVO, aka Tito, Alexander Olivo-Gonzalez and Ernesto
Cruz, Defendant-Appellant.
 No. 92-50431.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1993.
Decided May 19, 1993.
 
 Before: KOZINSKI, SUHRHEINRICH,* and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Because the parties are familiar with the facts, we do not recite them here.
 
 I. Fifth Amendment Waiver
 
 3
 We reject Bravo's contention that the district court improperly compelled him to answer questions during cross-examination in violation of the Fifth Amendment. The district court did not abuse its discretion with regard to the extent of Bravo's cross-examination. See United States v. Black, 767 F.2d 1334, 1341 (9th Cir.), cert. denied, 474 U.S. 1022 (1985). Acts surrounding the circumstances of the charge of being a felon in possession of a firearm are relevant and admissible. See United States v. Daly, 974 F.2d 1215, 1217 (9th Cir.1992). Thus, given the connection between drug transactions and firearms, and the evidence of Bravo's role in the 100 kilo drug transaction, the district court did not abuse its discretion in determining that the Government's questions about the rip-off scheme were reasonably related to Bravo's testimony on direct. See Black, 767 F.2d at 1341.
 
 
 4
 Nor do we find that the district court abused its discretion by threatening to impose sanctions when Bravo refused to answer questions. See United States v. Panza, 612 F.2d 432, 437 (9th Cir.1979), cert. denied, 447 U.S. 925 (1980). The district court in this case warned Bravo of all possible sanctions, but by doing so it did not improperly coerce Bravo's testimony. Panza does not preclude imposition of all four sanctions when that is the appropriate course. Rather, the district court has the power to impose "one or more" of the four sanctions. See id. at 438.
 
 II. Motion to Withdraw
 
 5
 The district court did not abuse its discretion in refusing to permit Bravo's counsel to withdraw. See United States v. Walker, 915 F.2d 480, 482 (9th Cir.1990). In determining whether the district court should have permitted substitute counsel we consider whether the motion is timely; whether the district court adequately inquired into the nature of the complaint; and whether the conflict between counsel and the defendant was so great that it resulted in a total lack of communication, thereby preventing the defendant from obtaining an adequate defense. Id. After considering these factors, we conclude that the district court did not err.
 
 
 6
 We reject Bravo's claim that the motion was timely because the conflict of interest did not ripen until the Government introduced the letter. Bravo knew that the letter would be introduced if it became necessary to impeach his testimony. Thus, even though he may have notified the court of the possible conflict when the letter came to light, his counsel did not move to withdraw until the trial was almost over. Further, the district court adequately inquired as to the reasons Bravo's counsel sought to withdraw and it considered counsel's proffer as to his expected testimony. We accord the district court sufficient latitude to conduct the proper inquiry under the circumstances of any given case. Walker, 915 F.2d at 483. Finally, this conflict did not result in a total lack of communication between counsel and Bravo that precluded Bravo from presenting an adequate defense. See id. at 483-85 (substitute counsel appropriate where client refused to speak with attorney and assist in preparation of defense due to irreconcilable conflict). In fact, counsel stated on the record that he was sure Bravo did not want to lose him, and thus there was no impediment to full and adequate communication between Bravo and his counsel.
 
 
 7
 Bravo also claims that he was deprived of effective assistance of counsel because there was a need for counsel's testimony. We disagree. He has failed to establish that a conflict of interest actually arose. Bravo himself could and did testify as to all matters his attorney would have reiterated. He claimed that he had written the letter merely to refresh Alvarez's memory. On redirect he was permitted to fully explain why he wrote the letter, including what his attorney told him and what Alvarez told him prior to trial. Indeed, during his motion to the court, counsel admitted that his testimony would be in part corroborative. Therefore, absent the need for counsel's testimony, no conflict arose. Even if we assume this constituted a conflict, Bravo has not shown it had a "likely" effect on his counsel's advocacy. See United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir.1992). Neither Bravo's defense nor counsel's advocacy were impaired in any way.
 
 III. Evidentiary Rulings
 A. Evidence of Drug "Rip-Off" Scheme
 
 8
 The district court neither abused its discretion in admitting evidence of the drug rip-off scheme, nor in finding the probative value outweighed the prejudicial effect. See United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991); see also United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989). Evidence of the drug rip-off scheme was inextricably intertwined with possession of the firearm. See Daly, 974 F.2d at 1217. Therefore, it was both relevant and admissible. Id.
 
 B. Prior Convictions: (Escape and Murders)
 
 9
 The invited error doctrine precludes Bravo from succeeding on his claim that error occurred because the jury heard evidence regarding his prior bad conduct. United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). Bravo himself testified that he was an escaped convict and that he was serving life for murder. Furthermore, once he opened the door, the Government had the right to cross-examine him about what he had already said. Bravo cannot seek reversal on the basis of his own evidentiary errors. See id.
 
 C. Letter
 
 10
 We find no error in admitting the intercepted letter. Contrary to Bravo's contention, the nature of the letter does not change depending upon the redacted or unredacted version; rather, both letters are equally inculpatory. The letter indicates that Bravo was attempting to suborn perjury, and therefore it was highly relevant to impeach Bravo. It was not admitted in the Government's case-in-chief; rather it was admitted to impeach Bravo during cross-examination. Bravo's argument that the evidence was irrelevant is without merit. Nor did the district court abuse its discretion in finding the probative value of the letter outweighed its prejudicial effect.
 
 IV. Sentencing Guidelines
 A. Application of U.S.S.G. § 2K2.1
 
 11
 The district court determined that because Bravo possessed the firearm in connection with a drug offense (100 kilo drug transaction), § 2K2.1(c)(1) applied, triggering the application of § 2X1.1. Section 2X1.1 provides for an offense level of the intended underlying substantive offense which can be established with reasonable certainty.[1] Hence, the 100 kilo drug transaction renders an offense level of thirty-eight including a two-point increase for possession of a firearm during the commission of a drug offense. See § 2D1.1(a)(3), (b)(1), (c)(4).
 
 
 12
 Bravo claims that § 2K2.1(c)(1) only applies when the defendant uses a firearm in connection with a crime for which he could not be prosecuted under federal law, i.e., the section only applies with regard to a state crime. This argument lacks merit. The case he relies upon, United States v. Humphries, 961 F.2d 1421 (9th Cir.1992), does not substantiate his position. Indeed, Humphries supports the district court's application of the Guidelines in this case. See id. at 1421-22 (pursuant to § 2K2.1 sentencing court can consider underlying conduct even if the defendant has not been convicted of the offense in state court). It does not hold that only state and not federal law violations give rise to the application of § 2K2.1.
 
 
 13
 B. Two-point Increase for Obstruction of Justice
 
 
 14
 The district court properly applied a two-point enhancement for obstruction of justice. Section 3C1.1 provides for a two-point increase if the defendant obstructs or impedes the administration of justice during investigation, prosecution, or sentencing. Committing, suborning, or attempting to suborn perjury constitute obstruction of justice. § 3C1.1, comment. (n. 3(b)). Given both the incriminatory letter in which he was suborning perjury and his own perjurious testimony (e.g., his denial of drug rip-off scheme), the district court did not clearly err in finding that Bravo both committed and attempted to suborn perjury. See United States v. Torres-Rodriguez, 930 F.2d 1375, 1389-90 (9th Cir.1991).
 
 C. Applicable Guideline Version
 
 15
 Bravo finally contends that the district court should have calculated his sentence according to the version of the Guidelines in effect at the time of his sentencing (1991 version), rather than the version in effect at the time he committed the offense (1988 version). However, we conclude that whether or not the district court should have applied the 1991 version is irrelevant given that, under either version, Bravo's sentence would be the same. A sentencing issue need not be reviewed if resolution of that issue would not alter the sentence. United States v. Cooper, 912 F.2d 344, 348 (9th Cir.1990); United States v. Turner, 881 F.2d 684, 688-89 (9th Cir.), cert. denied, 493 U.S. 871 (1989).
 
 
 16
 This court's recent decision in United States v. Rodriguez-Razo, 962 F.2d 1418 (9th Cir.1992), has somewhat altered the Cooper/Turner standard so that the burden is on the Government to persuade us that an error in sentencing did not affect the district court's selection of a sentence. Id. at 1424 (citing Williams v. United States, 112 S.Ct. 1112, 1120 (1992)). The Government must show that the error did not affect the district court's selection of a specific sentence; i.e., even without the error the district court would have imposed the same sentence and not a lower sentence within the appropriate range. Id. at 1424-25. "Only if the government fulfills its burden in showing harmless error may we decline to remand to the district court." Id. at 1424.
 
 
 17
 Notwithstanding the more exacting Rodriguez-Razo standard, we conclude that the Government has met this higher burden here. The present case is distinguishable from Rodriguez-Razo in one important respect. In Rodriguez-Razo, the sentencing ranges differed depending upon whether the Guideline was applied with or without the error. However, in this case, the sentencing range was the same regardless of which Guideline version was applied. The district court pronounced an alternative but equal sentence under both Guideline versions. The resulting range under either version was 360-life and the district court determined that life was the most appropriate sentence.
 
 
 18
 Therefore, even assuming error did occur in applying the wrong Guideline version, because the district court determined that the sentencing range was the same under either Guideline version (360-life), and because it would have imposed the same life sentence, we conclude that remand for resentencing is not warranted.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Bravo makes an argument that his offense level was incorrectly calculated because there was no evidence of the drug transaction. The record belies this contention. The investigation by the undercover agents, as well as Bravo's own admission regarding the drug rip-off establishes with reasonable certainty the underlying drug offense