Filed 6/4/24  P. v. Rannels CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F086158 |
| Plaintiff and Respondent, | (Super. Ct. No. MF012486A) |
| v. | |
| DANIEL WAYNE RANNELS, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from an order of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Levy, Acting P. J., Poochigian, J. and Meehan, J.

**INTRODUCTION**

A jury convicted defendant Daniel Wayne Rannels of multiple charges and the trial court found true prior conviction allegations, including that defendant had suffered a prior serious felony conviction as that term is defined in Penal Code section 667, subdivision (a).[1] We previously affirmed defendant's convictions but remanded the matter for the trial court to hold a new sentencing hearing to permit the court to exercise its discretion and determine whether to strike defendant's prior serious felony enhancement in light of the passage of Senate Bill No. 1393 (2017–2018 Reg. Sess.). (*People v. Rannels* (Sept. 24, 2020, F077140) [nonpub. opn.] [2020 Cal.App.Unpub. Lexis 6229; 2020 WL 5701888].)

On remand, the trial court declined to strike the five-year prior serious felony conviction enhancement and again imposed a sentence of 23 years. The court issued an amended abstract of judgment that reflected additional custody credits. Thereafter, defendant filed a motion seeking to compel the California Department of Corrections and Rehabilitation (CDCR) to apply the credits as noted in the amended abstract of judgment following the resentencing hearing. At a March 15, 2023, hearing to calculate defendant's custody credits, the court denied defendant's request for additional custody credits, ordered the credits reflected in the amended abstract of judgment to be modified, and also denied defendant's motion made pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to substitute appointed counsel. Defendant now asserts the court abused its discretion in denying his *Marsden* motion.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2018, a jury convicted defendant of four counts of infliction of corporal injury on a spouse or cohabitant (§ 273.5, subd. (a); counts 1, 2, 3 & 4), assault with a caustic

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

2.

chemical (§ 244; count 5), dissuading a witness by force or threat (§ 136.1, subd. (b)(1); count 9), and misdemeanor false imprisonment (§ 236; count 10). The court found true allegations defendant had suffered a prior strike conviction (§§ 667, subds. (c)–(j); 1170.12, subds. (a)–(e)) and prior serious felony conviction (§ 667, subd. (a)). The court declined to dismiss defendant's strike prior and sentenced defendant to an aggregate term of 23 years' imprisonment: the upper term of eight years on count 1, a consecutive term of two years (one-third of the midterm, doubled) on count 2, a consecutive term of two years (one-third of the midterm, doubled) on count 3, a consecutive term of two years (one-third of the midterm, doubled) on count 4, the upper term of eight years on count 5 stayed pursuant to section 654, and a consecutive term of four years (the midterm) on count 9 enhanced by a term of five years for defendant's prior serious felony conviction pursuant to section 667, subdivision (a)(1).[2] Defendant was awarded 304 actual custody credits and 304 custody credits for good and work time for a total of 608 days as of March 8, 2018.

In a previous appeal, we affirmed defendant's convictions but remanded the matter for the trial court to hold a new sentencing hearing to permit it to exercise its discretion and determine whether to strike defendant's prior serious felony enhancement in light of the passage of Senate Bill No. 1393 (2017–2018 Reg. Sess.). (*People v. Rannels*, *supra*, F077140 [2020 Cal.App.Unpub. Lexis 6229; 2020 WL 5701888].) On remand, at a hearing on June 25, 2021, the court declined to strike defendant's five-year prior serious felony enhancement and reimposed the same sentence. The July 15, 2021, amended abstract of judgment reflects 1,813 total credits for time served, composed of 1,509 actual credits and 304 conduct credits.

---

[2]The court also sentenced defendant on count 10 to one year in the Kern County jail to be served concurrently with the sentence on count 9.

On November 7, 2022, defendant filed a motion asserting the CDCR had failed to apply the additional 1,205 days of actual time-served custody credits reflected in the abstract of judgment. He asserted "the court is accountable to correct and submit an updated Abstract of Judgement or order the C.D.C.R. to apply the custody credit of 1205 actual days served immediately to prevent any further violation of [defendant]'s due process rights …."

On March 15, 2023, the court held a hearing on defendant's motion during which defendant requested a *Marsden* hearing, seeking to relieve his appointed counsel. The court proceeded with an in camera hearing and then denied defendant's motion to relieve his counsel pursuant to *Marsden*.

During the in camera hearing, defendant asserted he and his counsel had "irreconcilable differences"; counsel was "appointed only to be a friend of the Court; and he argued his counsel was "incompetent" of the law. Defendant asserted he felt like he was "being attacked" during an interview with his counsel; he felt like he was "talking to the district attorney and not [his] own attorney."

In response to questioning by the court, defense counsel stated he did not believe there was a breakdown of the attorney-client relationship of such magnitude that it would substantially impair defendant's right to effective assistance of counsel. He asserted defendant was "very upset" regarding what counsel had told him during their meeting. Counsel stated he was "trying to convey accurate legal information" and they had a difference of opinion on "the legal issue of whether [defendant is] entitled to presentence credits for time he spent in the [CDCR]." Counsel told defendant he did not believe he had a basis to argue to the court that defendant was entitled to presentence credits for the time defendant spent in the CDCR, and there was a "breakdown" on that issue. Counsel represented that he "competently prepared" for the hearing on the motion and was able to communicate with defendant sufficiently during their meeting.

4.

Defendant asserted he did not "accept" his counsel's representation and stated there were "a lot more legalities that could be addressed that [defense counsel] is unwilling to address." Defendant asserted, "I'm [B]lack" and "[y]ou guys are very racial, and this is systematic racial injustice." He stated that he was "competent" and "capable of representing" himself. The court explained to defendant that if it denied his *Marsden* motion, he had the right to move to represent himself pursuant to *Faretta* (*Faretta v. California* (1975) 422 U.S. 806). The court asked defendant repeatedly if he had anything further on the *Marsden* motion. Defendant again stated counsel was not representing him adequately; he was "ineffective"; and they had an irreconcilable difference. The court denied defendant's *Marsden* motion, finding there had not been an adequate showing defense counsel had failed to competently represent defendant. The court advised defendant that his counsel was "a competent, experienced attorney" and "he can't tell you what you want to hear if it's not supported by the evidence or the law."

Defendant subsequently withdrew his request to represent himself pursuant to *Faretta*. The court then stated it had gone through the file and determined it made "an error in the calculation in granting custody credits," stating it "had no jurisdiction or power to calculate or grant any credits between the dates of March 9, 2018, to June 25th, 2021. That was the time period calculated by CDCR, when the defendant is in CDCR, because they do their own calculations for good and work credits." The court concluded it had "jurisdiction to correct the calculation of custody credits while the defendant was in Kern County Jail." It denied defendant's motion, but ordered that an amended abstract of judgment be prepared to reflect defendant had presentence credits in the amount of 304 actual days and 304 "good and work for local time" for a total of 608 custody credits.

That same day, the court also issued a written order denying the motion for modification of custody credits and ordering the July 15, 2021, abstract of judgment to be modified to reflect "pre-sentencing credits in the amount of 304 actual days and 304 good and work or local time for a total of 608." It stated, at the resentencing hearing the court

5.

"misread the credits into the record as the credit for time served of 1,509 days plus 304 good and work or local time for a total of 1,813 days. Probation Officer's Report had noted 1,509 days [comprised] as 304 days of detention in Kern County Jail prior to [defendant]'s conviction plus 1,205 days incarcerated under the supervision of the CDCR (3/9/2018 to 6/25/2021) after the original Abstract of Judgment was entered and prior to the entry of the new sentence and the Court simply read the numbers from the wrong line of the Probation Officer's Report." The court stated, "The credits should have remained as 304 actual days and 304 good and work or local time for a total of 608," though the amended abstract of judgment entered on July 15, 2021, misstated credits of 1,813 days calculated as 1,509 days plus 304 good and work time. An amended abstract of judgment was filed on April 10, 2023, reflecting the same sentence, but updating the custody credits to reflect the court's March 15, 2023, order.

## DISCUSSION

In his sole issue, defendant argues the trial court abused its discretion in denying his motion to substitute counsel pursuant to *Marsden*. We disagree.

### A.     Standard of Review and Applicable Law

Under *Marsden*, when a defendant in some manner moves to discharge current counsel, the trial court's duty is to inquire as to the reasons for the dissatisfaction and exercise its discretion in deciding whether to replace counsel. (See *People v. Lucky* (1988) 45 Cal.3d 259, 281; *Marsden*, *supra*, 2 Cal.3d at pp. 123–124.) "'[T]he court must consider any specific examples of counsel's inadequate representation that the defendant wishes to enumerate. Thereafter, substitution is a matter of judicial discretion. Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel. [Citations.]'" (*People v. Smith* (1993) 6 Cal.4th 684, 690–691.) "'Substantial impairment of the right to counsel can occur when the appointed

6.

counsel is providing inadequate representation or when "the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]." [Citations.]'" (*People v. Myles* (2012) 53 Cal.4th 1181, 1207.)

### B.     Analysis

Defendant argues the court abused its discretion in denying his motion to substitute appointed counsel. He asserts the record reflects he did not trust his counsel and they "had a very heated disagreement about fundamental matters." He relies upon *United States v. Williams* (9th Cir. 1979) 594 F.2d 1258 and *U.S. v. Walker* (9th Cir. 1990) 915 F.2d 480 in support of his contention. He argues the court erred by focusing on defense counsel's legal competence, rather than "the nature and extent of the conflict between defendant and counsel." He asserts his right to effective assistance of counsel was substantially impaired and remand is required on that basis. The People contend the record from the *Marsden* hearing reflects defense counsel tried to "convey accurate legal information" to defendant during their meeting, and defendant disagreed with the assessment. They assert the court was within its discretion to credit counsel's statements, which supported a conclusion he had provided constitutionally effective assistance. We agree with the People.

Defendant has failed to establish the court erred in denying his motion to substitute appointed counsel. Although defendant stated he believed his counsel was "incompetent" and he did not trust him, defense counsel informed the court he "competently prepared" for the hearing, communicated with defendant sufficiently during their meeting, and he did not believe he had a basis to argue to the court that defendant was entitled to presentence credits for the time defendant spent in the CDCR, though defendant disagreed. The court was entitled to credit counsel's statement and conclude

7.

defendant's complaints were unfounded.[3]  (See *People v. Taylor* (2010) 48 Cal.4th 574, 600 ["[a]fter … considering counsel's responses to each of defendant's grievances, the trial court was entitled to credit counsel's explanations and to conclude that defendant's complaints were unfounded"]; *People v. Jones* (2003) 29 Cal.4th 1229, 1245 ["'To the extent there was a credibility question between defendant and counsel at the hearing, the court was "entitled to accept counsel's explanation"'"]; accord, *People v. Myles*, *supra*, 53 Cal.4th at p. 1207.)

And defendant did not establish an irreconcilable difference existed between counsel and himself.  Defendant generally asserted he felt his counsel was attacking him and he did not trust counsel, but defendant's assertions he did not trust his attorney did not establish an irreconcilable conflict.  (See *People v. Taylor*, *supra*, 48 Cal.4th at p.

---

[3]In his reply brief, defendant argues for the first time his "statement to the trial court that he felt the situation with his attorney was one of systematic racial injustice, clearly an irreconcilable conflict, and one that required further exploration by the trial court on that issue."

Initially, "'[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party.'" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218–1219.) Irrespective, we cannot conclude defendant's claim has merit.  It is true during the hearing defendant stated generally, "You guys are very racial and this is systematic racial injustice," before stating he was "competent," "not belligerent," "not combatant [*sic*]," "over the age of 21," and "very capable of representing" himself.  The court then explained defendant could make a motion to represent himself if it denied his *Marsden* motion, and asked defendant if he had anything else on the *Marsden* motion.  Defendant did not raise any additional specific allegations, but instead told the court he knew the court was going to deny his motion so "go ahead and do that," "[d]on't waste my time."

Given the context of defendant's generalized statement regarding "systematic racism"—which we cannot conclude was even necessarily directed at his counsel—the court's repeated inquiries into the bases of defendant's complaints regarding his attorney, including the court's follow up after defendant's statement, and the absence of any specific allegations by defendant, we cannot conclude the court had a duty to inquire further, beyond that which it did.  (See *People v. Hill* (1983) 148 Cal.App.3d 744, 753 ["the court must inquire on the record into the bases of defendant's complaints and afford him an opportunity to relate specific instances of his attorney's asserted inadequacy"].)  Nor can we conclude defendant's generalized allegation established an "irreconcilable conflict."  Rather, as discussed, the court was entitled to credit defense counsel's representation that there had not been a breakdown in the attorney-client relationship.

600.)  Rather, as the California Supreme Court has reasoned, "'If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.'"  (*People v. Myles*, *supra*, 53 Cal.4th at p. 1207; accord, *People v. Abilez* (2007) 41 Cal.4th 472, 489; *People v. Jones*, *supra*, 29 Cal.4th at p. 1246.)  And though counsel explained he and defendant disagreed with regard to the amount of presentence custody credit to which defendant was entitled, defendant does not argue on appeal, nor can we conclude, his counsel rendered ineffective assistance by failing to argue defendant should have been entitled to additional custody credit, an argument that had no basis in the law.  And, to the extent defendant and his counsel disagreed regarding appropriate arguments to raise at the hearing, "'"[t]actical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.'"'"  (*People v. Myles*, *supra*, at p. 1207.)

Defendant's cited authorities do not persuade us otherwise.  In *United States v. Williams*, *supra*, 594 F.2d 1258, the Ninth Circuit Court of Appeals concluded the trial court's denial of the defendant's motion for substitution of appointed counsel— approximately a month before trial and after the defendant made a prima facie showing of an irreconcilable conflict between him and his appointed attorney—was error.  (*Id*. at pp. 1260–1261.)  There, the defendant detailed the "state of disagreement, bad relationship, and lack of communication he claimed existed between himself and his lawyer in regard to the preparation of a defense," which counsel did not refute but he instead "tended to confirm that the course of the client-attorney relationship had been a stormy one."  (*Id*. at pp. 1259–1260.)  On two occasions, the trial court in *Williams* "indicated its view that it was improper, apparently from a policy standpoint, to allow an indigent defendant with counsel appointed at the expense of the Government to 'fire' his attorney and have another lawyer appointed to act for him."  (*Id*. at p. 1260.)  The court gave the defendant

the option of proceeding with his appointed counsel or to represent himself; the defendant chose the latter and "the defense was a disaster." (*Ibid.*) In concluding the trial court erred in denying the motion for substitution of appointed counsel, the *Williams* court noted "there was no finding, although a strong showing was made, on the issue of irreconcilable conflict, and the matter was called to the attention of the trial court well before the date of trial." (*Id.* at p. 1261.)

In *U.S. v. Walker*, *supra*, 915 F.2d 480, a week before his trial, the defendant sent a letter to the district judge requesting appointment of a new attorney. (*Id.* at pp. 481–482.) He "listed several witnesses he believed were crucial to his defense and explained that he told his present attorney about these witnesses, but she had failed to contact them." (*Id.* at p. 482.) A week later, on the day trial was set to begin, the defendant told the court about the letter and moved to have different counsel appointed to represent him. (*Ibid.*) The court elicited from the defendant "that he was not challenging his present attorney's legal competence." (*Ibid.*) Then, it denied his motion. (*Ibid.*) The defendant's attorney then moved to withdraw and stated she and the defendant "were experiencing irreconcilable differences that were preventing her from representing" him. She told the court the defendant was refusing to speak to her about the case or assist her in the preparation of his case. (*Id.* at pp. 483–484.) The court found counsel was competent and denied the motion. (*Id.* at pp. 482, 483, 484.) On appeal, the Ninth Circuit reversed, noting "the district court made virtually no attempt to discover the causes underlying [the defendant's] dissatisfaction with his attorney," and "the focus of the court's limited inquiry" was on defense counsel's competence rather than "on the nature and extent of the *conflict* between defendant and counsel." (*Id.* at p. 483.) The court concluded "an irreconcilable conflict arose between [the defendant] and his attorney which resulted in a total lack of communication preventing an adequate defense" such that the district court abused its discretion by denying his motion for substitute counsel, depriving him of his right to effective assistance of counsel. (*Id.* at p. 485.)

We are not faced here with the sort of irreconcilable conflict that marked the attorney-client relationships in *Williams* and *Walker*. Here, despite the court giving defendant numerous opportunities to expand, defendant failed to specify a particular conflict, but rather expressed a general lack of trust in and dissatisfaction with his attorney. (*People v. Taylor*, *supra*, 48 Cal.4th at p. 600 ["The mere "'lack of trust in, or inability to get along with,"' counsel is not sufficient grounds for substitution"].) And, unlike in *Williams* and *Walker*, defense counsel refuted the breakdown of the attorney-client relationship. Counsel represented that he could and had been communicating with defendant, and he denied there was an irreconcilable conflict. The court was entitled to credit counsel's statements, as it did, in denying defendant's motion to substitute counsel. *Walker* and *Williams* are inapposite.

On the record before us, we cannot conclude the court abused its broad discretion in denying defendant's motion to relieve his appointed counsel. Accordingly, we reject defendant's sole contention.

## DISPOSITION

We affirm.