15 F.3d 1094
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Benjamin UBA, Defendant-Appellant.
 Nos. 92-50664, 92-50665.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1993.*
Decided Dec. 21, 1993.
 
 Before: FLETCHER, PREGERSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Benjamin Uba pled guilty to one count of conspiracy to possess with intent to distribute and import heroin in violation of 21 U.S.C. Secs. 846 and 963. He appeals pro se his conviction and 151-month sentence under the Sentencing Guidelines.
 
 
 3
 We have jurisdiction pursuant to 18 U.S.C. Sec. 3742 and 28 U.S.C. Sec. 1291. We affirm in part, and reverse and remand in part.
 
 BACKGROUND
 
 4
 Benjamin Uba, a citizen of Liberia, was indicted by a federal grand jury on May 1, 1992, on five counts arising from an alleged conspiracy to import 2,161 grams of heroin. He was ultimately charged on two counts: (1) importation of heroin in violation of 21 U.S.C. Secs. 846 and 963; and (2) attempted importation of heroin in violation of 21 U.S.C. Secs. 852(a), 960(a)(1), and 963.
 
 
 5
 On July 7, 1992, Uba entered into a plea agreement with the United States Attorney. During plea negotiations and at the plea hearing Uba was represented by retained counsel. Pursuant to the plea agreement, Uba pled guilty to the first count, importation of heroin, and the government dismissed the second count, attempted importation.
 
 
 6
 In response to the district court's questions at the plea hearing, Uba affirmed that he had agreed with two coconspirators, Margaret Osiminibeke and Siba Dandan, to possess 2,161 grams of heroin and import it from outside the United States. He also affirmed that he had called Osiminibeke to discuss delivery of a suitcase which he knew contained heroin.
 
 
 7
 At the plea hearing the district court also questioned Uba in detail about the circumstances of his guilty plea. He answered affirmatively that: (1) the plea agreement had been read, translated[1] and explained to him; (2) he understood the nature of the rights he waived; (3) he understood that the offense to which he pled guilty carried a mandatory minimum sentence of 10 years and a maximum penalty of life imprisonment; (4) he was pleading guilty because he was in fact guilty; and (5) he had sufficient time to discuss the matter thoroughly with his attorney and was satisfied with his representation. Based on Uba's demeanor, attitude and intelligence, the district court found that his guilty plea was made voluntarily and that there was a factual basis for the plea.
 
 
 8
 Under Uba's plea agreement, the government obligated itself to move for a downward reduction in Uba's Sentencing Guideline offense level by two points under U.S.S.G. Sec. 3E1.1 (allowing downward adjustment for acceptance of responsibility), if Uba showed acceptance of responsibility through the day of his sentencing. Also, the government promised that, subject to its "reasonable discretion," it would move for a downward departure in Uba's sentencing range under U.S.S.G. Sec. 5K1.1 (substantial assistance to authorities), if Uba gave substantial assistance in the investigation or prosecution of another person. The plea agreement did not provide that the government would move under 18 U.S.C. Sec. 3553(e) for a reduction in Uba's mandatory minimum sentence of 10 years if Uba cooperated in the investigation or prosecution of another person.
 
 
 9
 Before preparing a presentence report, a U.S. probation officer interviewed Uba at the Los Angeles Metropolitan Detention Center on July 24, 1992. The probation officer conducted the interview without the presence of Uba's counsel. The presentence report recommended against a reduction in offense level for acceptance of responsibility because, during the interview, Uba minimized his role in the heroin importation scheme by portraying himself as a victim of manipulation and entrapment. The presentence report further recommended a two-point upward adjustment in offense level under U.S.S.G. Sec. 3B1.1, because Uba recruited coconspirator Osiminibeke and set terms for her payment, thereby taking a role as an organizer, leader, manager, or supervisor.
 
 
 10
 Before Uba's sentencing hearing, which was scheduled for October 5, 1993,[2] Uba wrote three letters to the district court. In the first letter, dated September 2, 1992, he complained that he had not seen his attorney since mid-July and could not reach him on the phone, because the attorney would not accept collect telephone calls. He wrote the district court that he did not understand the document he signed on July 7, 1992, and that he did not know what was happening in his case. He requested assistance in obtaining a refund of $5,000 that he had paid his attorney. He also asked the court to appoint another attorney, whom he named.
 
 
 11
 Responding to Uba's first letter, the district court clerk on September 14, 1992[3] wrote to Uba that he would have to "have a motion for substitution made on [his] behalf" to replace defense counsel. The clerk further instructed Uba that the district court had no authority to help him recover the attorney's fees and that he could take up the matter with the State Bar.
 
 
 12
 Uba wrote a second letter to the district court, dated September 26, 1992, to reiterate that his attorney had not seen him and would not accept his telephone calls. Uba expressed concern that one week before sentencing he had not yet seen his presentence report or prepared for the sentencing hearing in any way with his attorney.
 
 
 13
 Uba's third letter to the district court, dated October 5, 1992, acknowledged receipt of the clerk's letter the preceding Friday, and requested a continuance of his sentencing hearing scheduled for that afternoon, so that he could obtain an attorney with whom he could communicate. Uba again requested appointed counsel.
 
 
 14
 Uba's sentencing hearing commenced at 1:30 p.m. on October 5, 1992. At the opening of the hearing, defense counsel--who did show up--stated that he believed he was no longer Uba's attorney and that he had not communicated with Uba for two weeks. The district court responded that it had received no motion for substitution, that it was "awfully late" in the proceedings to do so, and that defense counsel, as attorney of record, would represent Uba. Defense counsel requested a continuance of sentencing to give Uba a further opportunity to cooperate with the government. The court denied this request.
 
 
 15
 In response to the district court's questions, Uba said he had not yet seen the presentence report. The court then moved Uba's hearing to the end of its calendar that afternoon so that Uba could review the report with his attorney and a translator.
 
 
 16
 When the sentencing hearing resumed, defense counsel did not object to the presentence report except to say that he was representing Uba against Uba's wishes. Uba again requested substitute counsel. Uba complained that defense counsel had not visited him or returned his phone calls, that he had not explained the presentence report, and that Uba still did not understand the plea agreement. Defense counsel replied that he had visited Uba in jail at least 20 times. The court denied Uba's requests for a continuance and new counsel, and asked Uba if he had anything further to say about the case. Uba made a plea for mercy and denied dealing, touching, or selling drugs.
 
 
 17
 The district court imposed the Guidelines range recommended in the presentence report. To the base offense level of 32 under U.S.S.G. Sec. 2D1.1(c)(6), the court added two points for Uba's role in the offense under U.S.S.G. Sec. 3B1.1, and found Uba to be in criminal history category I. The resulting offense level of 34 resulted in a guidelines range of 151 to 188 months, a range in excess of the statutory minimum sentence of 10 years provided in 21 U.S.C. Sec. 960(b)(1)(A). The court imposed a sentence of 151 months, the shortest sentence in the Guidelines range.
 
 
 18
 Uba appeals his conviction and sentence, asserting: (1) ineffective assistance of counsel denied him his Sixth Amendment right to counsel; (2) the district court erred by denying Uba's request to appoint new counsel to replace his retained counsel; (3) Uba was denied the effective assistance of counsel during the presentence interview; (4) the district court erred by denying Uba sufficient time to review and respond to the presentence report; (5) his guilty plea was not intelligently or voluntarily made due to ineffective assistance of counsel and government breach of the plea agreement; and (6) the district court erred when it adjusted Uba's sentence upward based on his leadership role in the offense.
 
 DISCUSSION
 1. Ineffective Assistance of Counsel
 
 19
 We generally review ineffective assistance of counsel claims in habeas corpus proceedings and decline review on direct appeal. United States v. Pope, 841 F.2d 954, 958 (9th Cir.1988). We entertain ineffective assistance of counsel claims on direct review only if the record is sufficiently complete to allow us to rule on the claim. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991).
 
 
 20
 Uba asserts on appeal that his attorney misled him regarding the terms of his plea agreement and failed to meet him in jail or return his phone calls. The record shows a dispute between Uba and his attorney on these matters; Uba's counsel told the court he had met with Uba in jail at least 20 times. The facts necessary to resolve the claims do not appear in the record. Neither do other relevant facts, like defense counsel's explanation to Uba of his rights under the plea agreement and his alleged failure to conduct an adequate investigation. We therefore decline to review Uba's claim of ineffective assistance of counsel, because the record is not sufficiently complete for us to rule on the claim.
 
 2. Denial of Uba's Request for New Counsel
 
 21
 We review for abuse of discretion the district court's denial of a motion for substitution of counsel. United States v. Fagan, 996 F.2d 1009, 1014 (9th Cir.1993). We evaluate three factors: (1) the timeliness of the motion for substitution; (2) the adequacy of the court's inquiry into defendant's complaint; and (3) whether the conflict between defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. United States v. Walker, 915 F.2d 480, 482 (9th Cir.1990).
 
 
 22
 In Walker, the defendant wrote a letter one week before trial to request substituted counsel, asserting that his communication with counsel broke down after they had disagreed on trial strategy. When the defendant moved for substitution on the day of trial, the court denied the request because it was not timely and because the attorney was competent. We held that the court had abused its discretion because: (1) even though the letter written personally to the judge was not a formal motion, Walker clearly attempted to make his motion before trial began; (2) the court's inquiry was inadequate because it addressed only the attorney's competence and not the breakdown in communication between the defendant and his attorney; and (3) the defendant had made a prima facie showing of an irreconcilable conflict with his attorney which was not disputed. Id. at 482-84.
 
 
 23
 a. Timeliness
 
 
 24
 The Walker court clearly considered an informal request addressed to the judge a week before trial in evaluating whether a motion on the day of trial was timely. Here, Uba wrote a letter requesting new counsel a month before his sentencing hearing. His letter might not have been a formal motion, and the requested remedy, appointment of a named lawyer, might have been unavailable; nevertheless, the letter timely alerted the court to the problem. It also undermined any argument that the request for appointed counsel was a delaying tactic. See United States v. Wadsworth, 830 F.2d 1500, 1509 (9th Cir.1987) (defendant's expression of dissatisfaction to appointed counsel two weeks before trial negates trial court finding that motion for substitution was an impermissible delaying tactic).
 
 
 25
 The government contends that, even if Uba's request was timely, this case is distinguishable from Walker because here the district court wrote back and instructed Uba on the proper procedure to obtain new counsel. Uba never followed the instructed procedure. We reject the government's argument because the government does not explain, and we do not understand, how a defendant in prison who is not a lawyer and cannot contact his lawyer could understand or execute an instruction to "have a motion made on [his] behalf," especially when he did not receive the letter until the Friday three days before sentencing, see supra note 3.
 
 
 26
 b. Adequacy of District Court Inquiry
 
 
 27
 The government concedes that the district court did not inquire into the conflict between Uba and his attorney. Gov. Brief, p. 16. Nevertheless, the government argues without authority that, because the court had possession of Uba's letters, an inquiry would have been "superfluous." In the sentencing hearing, however, the court neither referred to the content of Uba's letters nor demonstrated an awareness of having received them.
 
 
 28
 In Walker, the district court conducted an actual inquiry but we held that the inquiry was inadequate because it focused on competence rather than communication. In this case, the record also shows that the district court gave no attention to the issue of communication, and therefore the inquiry was inadequate.
 
 
 29
 c. Extent of Conflict
 
 
 30
 Whereas in Walker, the defendant stopped communicating completely with his attorney, in this case Uba and his lawyer communicated a little on the afternoon of sentencing. The government argues that because Uba wanted to have more communication with his attorney, he differs from defendants like Walker who demonstrated "irreconcilable conflict" by refusing further communication with their attorneys. See e.g., Brown v. Craven, 424 F.2d 1166, 1169 (9th Cir.1970) (defendant refused to speak with attorney or participate in trial in any way). Uba and his attorney had some communication but only after the court ordered them to communicate. Even though Uba's conflict with his attorney may not have been "irreconcilable," there was a total breakdown in communication between Uba and defense counsel during at least the two weeks before sentencing. Uba had never even seen the presentence report. He had repeatedly asked for new counsel and for help in getting his money back from retained counsel. At one point in the sentencing hearing, defense counsel made a statement that highlights the severity of counsel's conflict with Uba: counsel said of Uba's statements on his own behalf, "Your honor, I am not going to go into detail except everything that was said was rather far from the truth." Sentencing Tr., p. 12. When a 30-37 month increase in Uba's sentence rested partly on his showing of candor in accepting responsibility, it cannot have helped Uba's interests to have his attorney, in effect, call him a liar. As in Walker, the breakdown in communications and conflict between Uba and his attorney were severe enough to have prevented adequate legal representation for Uba.
 
 
 31
 d. Conclusion: Abuse of Discretion
 
 
 32
 Between Uba and his attorney communications had effectively ceased and relations had deteriorated to the point where counsel made a statement against Uba's interests to vindicate his own interest. Uba had tried to alert the court to the problem more than a month before the hearing, and the court conducted no inquiry whatsoever. Moreover, substituting counsel would at most have required continuing a sentencing hearing. Based on the teachings of Walker, we find that the district court abused its discretion when it denied the motion to substitute counsel and continue the sentencing hearing.
 
 
 33
 3. Lack of Counsel During Presentence Interview
 
 
 34
 The parole officer conducted the presentence interview without the presence of Uba's attorney. We have held that a probation officer must permit a defendant to have his attorney present at the presentence interview. United States v. Herrera-Figueroa, 918 F.2d 1430, 1433 (9th Cir.1990). The presence of an attorney comprises an important safeguard because "[c]asual, ill-considered or inaccurate answers offered without a full understanding of the potential consequences may result in a substantial increase in the recommended period of incarceration." Id. at 1436. The rule that a defendant has a right to have counsel present at the presentence interview is not based on a constitutional guaranty but rather is a rule based on our supervisory power. Id. at 1434. We consider a non-constitutional error to be harmless unless it more likely than not affected the outcome of sentencing. See United States v. Rahm, 993 F.2d 1405, 1415 (9th Cir.1993).
 
 
 35
 Here, because Uba's communication with counsel had broken down, he had no opportunity to request presence of counsel at the interview. Uba probably did not know that when he minimized his role in the smuggling scheme during the interview with the probation officer that he jeopardized any reduction for acceptance of responsibility, thereby augmenting his prison term by 30-37 months by not completely accepting responsibility. Uba would have benefitted from an attorney's advice on this subject. We find that the absence of counsel at the interview more likely than not contributed to Uba's enhanced sentence. Therefore, the error was not harmless. We grant a new presentence interview with a new probation officer and new counsel present. United States v. Rodriguez-Razo, 962 F.2d 1418, 1425 (9th Cir.1992) (appropriate remedy in such cases).
 
 
 36
 4. Uba's Opportunity to Review and Respond to the Presentence report
 
 
 37
 Section 3552(d) of Title 18 of the United States Code provides:
 
 
 38
 The court shall assure that a report filed pursuant to this section [presentence report] is disclosed to the defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing, unless this minimum period is waived by the defendant.
 
 
 39
 18 U.S.C. Sec. 3552(d); see Fed.R.Crim.Proc. 32(c)(3) (incorporating virtually the same language). On the afternoon of sentencing, the district court discovered that Uba had not yet seen the presentence report or spoken about it with his attorney. The district court gave Uba until the end of calendar that day to review the report with his attorney and a translator. This clearly does not satisfy the 10-day requirement of 18 U.S.C. Sec. 3552(d).
 
 
 40
 The government contends that Uba's claim is "without merit" based on the following facts: (1) the report was disclosed (to whom it does not say) on August 6, 1992; (2) the court recessed to allow Uba to read the report; (3) the court gave Uba an opportunity to voice any objections he might have; and (4) Uba did not contest the facts in the report. The government fails to even refer to 18 U.S.C. Sec. 3552(d), and offers us no authority to find that the district court substantially complied with the statute, which explicitly required it to assure that the defendant receives a copy of the report ten days before sentencing.
 
 
 41
 We have previously held that giving a defendant only seven days' notice of the presentence report was harmless error. United States v. Turner, 898 F.2d 705, 714 (9th Cir.), cert. denied, 495 U.S. 962 (1990). However, in Turner, the only sentence-enhancing factor in the report was the quantity of drugs possessed by the defendant, and there was no evidence of friction between defendant and his counsel. Uba had much less time, only two or three hours, to review the report with an unprepared attorney with whom he had a conflict. The extremely short notice probably hindered Uba's ability to formulate a factual or legal response to the report, and ultimately affected the sentence. Therefore, the court's error in not assuring timely notice of the presentence report was not harmless. See Rahm, 993 F.2d at 1415 (harmless error standard applies).
 
 
 42
 5. Upward Adjustment for Leadership Role in Offense
 
 
 43
 Uba contends that the district court erred when it adjusted his Guidelines offense level upward under U.S.S.G. Sec. 3B1.1(c) because of his leadership role in the drug smuggling conspiracy. Section 3B1.1(c) provides for a two-point increase if a defendant was an "organizer, leader, manager or supervisor in any criminal activity." Uba challenges the district court's factual foundation for applying the upward adjustment.
 
 
 44
 A district court determines facts underlying adjustments to the Guidelines sentencing range based on a preponderance of evidence standard; the district court may use facts contained in the presentence report and not contested by the defendant to enhance the sentence. United States v. Turner, 905 F.2d 300, 301 (9th Cir.1990) (the presentence report and defendant's objections form the factual foundation for sentencing decisions).
 
 
 45
 The facts supporting the section 3B1.1(c) enhancement were that Uba recruited Osiminibeke to the conspiracy and arranged her payment. The presentence report included these facts, but Uba did not admit them during the plea hearing or in his plea agreement. Because Uba did not have sufficient notice of the presentence report, and because Uba's attorney (whom he had made a timely effort to substitute) was not prepared for the hearing, Uba did not have an adequate opportunity to challenge the facts supporting the enhancement. United States v. Nuno-Para, 877 F.2d 1409, 1415 (9th Cir.1989) (granting rehearing to defendant who had insufficient notice of facts used in sentencing enhancement).
 
 
 46
 6. Whether Guilty Plea was Knowing and Voluntary
 
 
 47
 a. Misrepresentation and Coercion
 
 
 48
 The transcript of the plea hearing reveals that the district court made a careful inquiry into Uba's understanding of the plea agreement, of the rights he waived by pleading guilty, and of the mandatory minimum ten-year sentence resulting from the guilty plea. He was given an opportunity to reveal any coercion. He affirmed the facts underlying his guilty plea. In any event, Uba's claim that his plea resulted from deliberate misrepresentation and coercion must be raised in a collateral appeal if at all.
 
 
 49
 b. Breach of the Plea Agreement
 
 
 50
 Uba also contends that the government breached the plea agreement. Uba did not raise this issue in the district court. We cannot review a claim of plea agreement breach raised for the first time on appeal, except under extraordinary circumstances. United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991).
 
 
 51
 However, we conclude that Uba may raise the issue of plea agreement breach at his new sentencing hearing. See generally Flores-Payon, 942 F.2d at 559-60 (the reason that we refuse to entertain breach of plea agreement claims that are first raised on appeal is that we lack the district court's capacity to establish the facts relevant to settling the claim ). If the government had breached the plea agreement, the breach would have infringed on Uba's constitutional right to due process. United States v. Packwood, 848 F.2d 1009, 1011 (9th Cir.1988) (strictly holding the government to terms of plea agreement because plea agreements implicate important due process rights). In general, a waiver of a constitutional right must be knowing and voluntary. Ostlund v. Bobb, 825 F.2d 1371, 1373 (9th Cir.1987), cert. denied 486 U.S. 1033 (1988); see also Johnson v. Zerbst, 304 U.S. 458, 464 (1938). In light of the breakdown in communications between Uba and his attorney, Uba probably was not sufficiently aware of his legal rights under the plea agreement to make a knowing waiver. Furthermore, because of the breakdown in communications, we do not attribute to Uba his counsel's failure to raise the issue of breach of plea agreement. See Walker, 915 F.2d at 485 (defendant who was improperly denied substitution of counsel was denied effective defense).
 
 
 52
 The new presentence interview, a new presentence report, and a new sentencing hearing will provide an additional opportunity for Uba and the government to perform their obligations under the plea agreement. The sentencing hearing is the appropriate venue for the defendant to raise a claim of breach of a plea agreement and, unlike this court, the district court is fully capable of evaluating the claim despite Uba's default. Flores-Payon, 942 F.2d at 560 (district court is best situated to evaluate claim of breach of plea agreement). Therefore, Uba's default in the previous hearing did not constitute a waiver of any rights he might otherwise have under the plea agreement at the new sentencing hearing on remand.
 
 CONCLUSION
 
 53
 We affirm Uba's conviction. We vacate his sentence and remand for resentencing as follows. Uba shall be permitted to substitute new retained counsel or, if he is unable to afford an attorney, the court shall appoint one for him. A new presentence interview shall be conducted by a new probation officer with Uba's counsel assisting him. A new presentence report shall be prepared. Uba and his counsel shall receive a copy of the new presentence report at least ten days before sentencing.
 
 
 54
 AFFIRMED in part; REVERSED and REMANDED in part.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The court provided a translator for Uba although he speaks and writes some English
 
 
 [2]
 Uba was originally scheduled to be sentenced on August 6, 1992. The district court continued the hearing until October 5, 1992 to allow Uba time to cooperate with the government
 
 
 [3]
 At Uba's sentencing hearing and in Uba's last letter to the district court, dated Monday October 5, 1992, Uba said that he did not receive the clerk's letter until the evening of October 2, 1992, the Friday before sentencing