**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

TRINIDAD RIVERA-CORONA, AKA
Trino Rivera-Corona,
          *Defendant-Appellant.*

No. 08-30286

D.C. No.
2:07-cr-02020-
LRS-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, Chief District Judge, Presiding

Argued and Submitted
March 4, 2010—Seattle, Washington

Filed August 18, 2010

Before: A. Wallace Tashima, Raymond C. Fisher and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Fisher

12147

## COUNSEL

David R. Partovi, Spokane, Washington, for the defendant-appellant.

Jane Kirk, Assistant United States Attorney, Yakima, Washington, for the plaintiff-appellee.

**OPINION**

BERZON, Circuit Judge:

This case requires us to clarify the standard for considering a criminal defendant's motion to discharge his privately retained counsel and to proceed with a different, court-appointed lawyer instead.

Trinidad Rivera-Corona pleaded guilty to carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). During the plea colloquy, Rivera-Corona stated that he understood the terms of the plea agreement; that his retained attorney, Nicholas Marchi, answered all of his questions about the agreement before he signed it; and that he was satisfied with Marchi's representation. Rivera-Corona also testified that nobody had forced him to enter the plea. The district court did not, however, advise Rivera-Corona of his "right to be represented by counsel— and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding," as required by Federal Rule of Criminal Procedure 11(b)(1)(D).

Before sentencing, Marchi moved to withdraw and requested that new counsel be appointed. He supported his motion with an affidavit stating:

> I was retained by the defendant. The Defendant has requested a hea[r]ing for a new attorney. He apparently maintains that he can no longer work with me. He has claimed that I have been ineffective. In the interest of justice and to allow defendant new counsel, [in] whom he would apparently have more faith, I would request that the Court appoint new counsel and allow me to withdraw.

At a hearing, Marchi explained that Rivera-Corona had called his office about a week after the change of plea hearing

and communicated, in Marchi's words, that "I either scared him or he was afraid of me or I didn't do my job." The court asked Marchi whether he had been retained to represent Rivera-Corona, to which Marchi responded that he had been retained for the entire case, but that he had "exhausted [the retainer] a long, long time ago." The court then invited Rivera-Corona to explain his reasons for seeking substitution of counsel, prompting the following exchange:

> **RIVERA-CORONA:** I would like to know if you can appoint another attorney, because I don't get along with this attorney.

> **THE COURT:** What are the reasons for your not getting along with this attorney?

> **RIVERA-CORONA:** Well, how could I say? He said if we went with a jury he wanted $5,000 more, and that's why. Otherwise, he was going to, like, prosecute my family, and that's why I got scared.

> **THE COURT:** Is there anything additional?

> **RIVERA-CORONA:** And that's why I want to know if you can give me another chance to continue fighting my case.

> **THE COURT:** Are there any other facts that I should consider?

> **RIVERA-CORONA:** For now, that's what I'm saying, and that's all.

> **THE COURT:** Have you given all of the information that you believe supports your request for different counsel?

> **RIVERA-CORONA:** Well, I wonder if you can just provide me with another attorney so I can continue

—how would I say? [J]ust continue fighting my case.

The district court did not ask Marchi whether Rivera-Corona's allegations were true and did not inquire into Rivera-Corona's financial eligibility for court-appointed counsel. Instead, right after the colloquy quoted, the district court, interpreting Rivera-Corona's request to include both a motion to withdraw his guilty plea and a request for new counsel, denied both, relying on Rivera-Corona's statement during his plea colloquy that he was satisfied with his representation. The district court judge told Rivera-Corona that he had the right to *hire* new counsel, but that "absent a complete and utter breakdown" in the attorney-client relationship he saw no grounds to "have counsel appointed at public expense, particularly since the last remaining item before [him was] sentencing." Rivera-Corona responded that he had no money to hire a new lawyer. Marchi represented Rivera-Corona at his sentencing hearing. This appeal followed.[1]

We review a district court's denial of a motion for substitution of counsel for abuse of discretion. *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001). Most attorney substitution cases arise when an indigent defendant requests new court-appointed counsel in place of an existing appointed attorney. In that context, we consider (1) the timeliness of the substitution motion and the extent of resulting inconvenience or delay; (2) the adequacy of the district court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it prevented an adequate defense. *See United States v. Mendez-Sanchez*, 563 F.3d 935, 942 (9th Cir. 2009).

---

[1]Rivera-Corona's guilty plea included a waiver of his right to appeal, but his contention that his plea was involuntary raises the possibility that the appeal waiver was involuntary and so not enforceable. *See United States v. Pena*, 314 F.3d 1152, 1154 n.1 (9th Cir. 2003). In any event, the government does not contend that the plea agreement bars this appeal.

This standard is the one the district court seemingly purported to apply, but it is not, as we now explain, the standard applicable to Rivera-Corona's motion.

**[1]** "The Sixth Amendment's right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel. The adequate-representation right applies to all defendants and 'focuses on the adversarial process, not on the accused's relationship with his lawyer as such.' " *Daniels v. Lafler*, 501 F.3d 735, 738 (6th Cir. 2007) (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984)). Indigent defendants have a constitutional right to effective counsel, but not to have a specific lawyer appointed by the court and paid for by the public. "[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989). The three-part extent-of-conflict inquiry applicable to attempts to substitute one appointed counsel for another is designed to determine whether the attorney-client conflict is such that it impedes the adequate representation that the Sixth Amendment guarantees to all defendants, including those who cannot afford to hire their own attorneys. *See Daniels v. Woodford*, 428 F.3d 1181, 1198 (9th Cir. 2005) (characterizing the extent-of-conflict inquiry as the "constructive denial of counsel doctrine").

**[2]** A defendant who can hire his own attorney has a different right, independent and distinct from the right to effective counsel, to be represented by the attorney *of his choice*. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006). The right to retained counsel of one's choice is not absolute: A defendant may not "insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation," and the Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of

fairness . . . and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Wheat v. United States*, 486 U.S. 153, 159-60 (1988)). In general, a defendant who can afford to hire counsel may have the counsel of his choice unless a contrary result is compelled by "purposes inherent in the fair, efficient and orderly administration of justice." *United States v. Ensign*, 491 F.3d 1109, 1115 (9th Cir. 2007).

The district court in this case to some degree recognized this distinct right to choose retained counsel. The court told Rivera-Corona that "you have the right, if you wish, to hire counsel . . . if you have the funds to do so" to replace or supplement Marchi, and did not indicate that there was any extent-of-conflict limitation on that right. But the district court treated as fundamentally different the question whether Rivera-Corona could replace retained counsel with appointed counsel.

Remarkably, we have no presently binding case law dictating the standards applicable in the situation in which a district court considers a defendant's motion to discharge his retained counsel and be represented by a court-appointed attorney. We do, though, have controlling case law in the obverse situation —where a defendant seeks to replace appointed with retained counsel.

**[3]** Because an additional constitutional right is at stake, such motions have never been governed by the three-part extent-of-conflict analysis applicable to defendants seeking new court-appointed counsel. Unless the substitution would cause significant delay or inefficiency or run afoul of the other considerations we have mentioned, a defendant can fire his retained *or* appointed lawyer and retain a new attorney for any reason or no reason. *See Miller v. Blacketter*, 525 F.3d 890, 896 (9th Cir. 2008) (in a case in which the defendant sought to replace his court-appointed attorney with retained counsel, evaluating "whether the trial judge's decision was an

unreasonable exercise of its discretion to balance Miller's right to his chosen counsel against concerns of fairness and scheduling"); *Bradley v. Henry*, 510 F.3d 1093, 1096-98 (9th Cir. 2007) (en banc) (holding the state court's denial of a motion to substitute retained counsel for appointed counsel to be an unreasonable application of *Gonzalez-Lopez*, because it was not justified by undue delay and the trial court wrongly assumed, without questioning the defendant, that she could not afford to pay retained counsel).[2] Conflict between the defendant and his attorney enters the analysis only if the court is required to balance the defendant's reason for requesting substitution against the scheduling demands of the court. *See United States v. Torres-Rodriguez*, 930 F.2d 1375, 1380 n.2 (9th Cir. 1991) (explaining that, absent any delay, where a defendant seeks to replace a court-appointed attorney with a private one, "there is no reason to deny substitution whether or not the defendant has complaints against, or an irrevocable conflict with, his appointed counsel") *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995); *accord United States v. Brumer*, 528 F.3d 157, 161 (2d Cir. 2008); *Carlson v. Jess*, 526 F.3d 1018, 1027 (7th Cir. 2008) ("[E]ven if a breakdown in communication is not so severe as to implicate the right to counsel, it may still provide a reasonable justification for a substitution of retained counsel.").

The only published case in this circuit that arose in the current posture, in which a defendant seeks to substitute appointed for retained counsel, is *Bland v. California Department of Corrections*, 20 F.3d 1469, 1475 (9th Cir. 1994). In *Bland*, we used the extent-of-conflict standard to evaluate a

---

[2]The majority opinion was joined by five of the eleven judges on the en banc panel, but four additional members of the en banc court agreed that the trial court's refusal to permit Bradley to substitute a retained attorney for her court-appointed counsel violated her Sixth Amendment right to counsel of choice. *See Bradley*, 510 F.3d at 1099-1100 (Clifton, J. concurring in the judgment) (holding the trial court violated Bradley's right to counsel of choice because none of the conditions identified in *Wheat* as overriding the right to counsel of choice were present).

habeas petition challenging the trial court's refusal to permit him to substitute a court-appointed attorney for his retained counsel, although we did not explain our use of that standard. *Id*. at 1475. *Bland* was overruled in this respect by *Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc), which concerned a habeas petitioner who sought new appointed counsel to replace existing appointed counsel. We held the extent-of-conflict inquiry generally inapplicable on habeas review, because the trial court's failure to inquire into the defendant's reasons for seeking substitution would not always render his conviction unconstitutional. Rather, the appropriate inquiry was whether the defendant's conflict with his attorney actually deprived him of the effective assistance of counsel. *Id.* at 1025, 1027.

*Schell* thus overruled *Bland*'s unexplained application of the extent-of-conflict standard, albeit on grounds not applicable here. As *Schell* concerned a motion to substitute appointed counsel on habeas review and did not implicate the constitutional right to counsel of choice, it did not establish a rule of analysis applicable to Rivera-Corona's substitution motion.[3] The portion of *Bland* that *Schell* did not disturb, however, compels us to conclude that the extent-of-conflict review is inappropriate here.

In rejecting Schell's contention that the trial court's abuse of discretion in denying his motion required us to grant his

---

[3]*Schell*'s statement that the extent-of-conflict standard was "of course . . . the correct methodology for reviewing federal cases on direct appeal," 218 F.3d at 1025, does not control in the current circumstances. In addition to being dicta, this statement obviously referred to substitution of *appointed* counsel, as it was followed by citation to *United States v. Walker*, 915 F.2d 480 (9th Cir. 1990), an appointed counsel case, which was also, of course, the context of *Schell*. Moreover, "[o]ur primary reason for . . . en banc review was to correct the standard of review we ha[d] been using to examine the constitutionality of a state court's handling of a motion to *substitute appointed counsel based on allegations of an irreconcilable conflict*." *Id.* at 1024 (emphasis added).

writ, we emphasized that Schell's qualified right to choice of retained counsel was not at issue, and on that ground distinguished *Bland*'s holding that denial of the substitution motion was per se prejudicial. *Id.* at 1025-26. *Bland* unequivocally held that the denial of the defendant's request to replace his retained counsel with a court-appointed attorney implicated the qualified right to choice of counsel. 20 F.3d at 1479. In so holding, *Bland* rejected as irrelevant the state's argument that the defendant had not clearly established his financial eligibility for appointed counsel. *Id.* at 1477.

**[4]** The district court here never inquired into Rivera-Corona's eligibility for appointed counsel, finding no grounds "to have counsel appointed at public expense, particularly since the last remaining item before me is sentencing." But the Criminal Justice Act expressly provides for appointment of counsel "[i]f at any stage of the proceedings . . . the court finds that the [defendant] is financially unable to pay counsel whom he had retained." 18 U.S.C.A. § 3006A(c); *see also Doherty v. United States*, 404 U.S. 28, 29 (1971). Thus, the district court erred in summarily rejecting Rivera-Corona's request for appointed counsel to replace retained counsel simply because of the expense and the stage of the proceedings.[4]

**[5]** As to the nature of the inquiry that should have been made, we agree with the Second Circuit's articulation:

---

[4]We note that Judge Fisher in his concurrence essentially agrees with us in the end as to the proper standard applicable here: If 18 U.S.C. § 3006A(c) applies, "the district court should have conducted an 'appropriate inquiry' into Rivera-Corona's financial eligibility for mid-case appointment of counsel and an adequate analysis of whether counsel should have been appointed in the 'interests of justice.' " Concurrence at 12169. Although Judge Fisher suggests Rivera-Corona may not have adequately invoked 18 U.S.C. § 3006A(c), Concurrence at 12169, § 3006A(c) simply provides the standard governing when a court may appoint counsel mid-proceedings if a person so requests and asserts that he is financially unable to pay retained counsel. So we can see no reason Rivera-Corona was required to invoke this provision independently of his request for appointed counsel.

Reviewing a district court's determination of financial eligibility for mid-case appointment under § 3006A(c) . . . requires a three-fold determination. First, did the district court conduct an "appropriate inquiry" into the defendant's financial eligibility? Second, if the district court conducted an appropriate inquiry, was the court correct in its ultimate conclusion of financial eligibility? Third, if the district court conducted an appropriate inquiry and defendant is financially eligible for mid-case appointment, did the district court err in its weighing of the "interests of justice"?

*United States v. Parker*, 439 F.3d 81, 92-93 (2d Cir. 2006). Here, the district court's failure to apply § 3006A is apparent at the first step. Rivera-Corona was given no opportunity to establish that, as he asserted, he was unable to pay Marchi and therefore eligible for court-appointed and publicly financed representation. Just as "[d]ue process does not permit a judge to decide [whether the defendant can afford to retain counsel to substitute for existing appointed counsel] without hearing the affected party," *Bradley*, 510 F.3d at 1098, a judge may not summarily decide that a defendant is not eligible for appointed counsel merely because he has previously retained an attorney.

We note that requiring a retained counsel to continue to represent the defendant even if the defendant cannot pay him and no longer wants him, which is what seemingly happened here, is no substitute for appointed counsel paid with public funds and so could not, without more, be in the "interests of justice." Such an unpaid lawyer is likely, consciously or subconsciously, to resent the transformation of an agreement to represent a defendant for pay into an involuntary pro bono arrangement, and therefore to seek to end the representation as expeditiously as possible. That, indeed, is precisely what Rivera-Corona alleged happened here with respect to Marchi's advice whether to plead guilty. Moreover—as also

alleged here—an involuntarily unpaid lawyer may influence the defendant's litigation choices by expressing an intention to seek fees from relatives or friends, or from the defendant should he later obtain funds. Our system for providing compensated lawyers where the defendant cannot afford to compensate counsel himself eliminates the opportunity for such extraneous influences on criminal proceedings.[5]

Nor was the district court entitled to rely on Rivera-Corona's statement during his plea colloquy that he was satisfied with Marchi's representation. According to Rivera-Corona, Marchi demanded money that his client presumably did not have as a condition of going to trial, and was prepared to "prosecute"—presumably sue—Rivera-Corona's family if he didn't pay it. If true, these facts could support a motion to set aside his plea, as Rivera-Corona's statement of satisfaction with Marchi at the colloquy could be explained by the same facts. *See United States v. Gonzalez*, 113 F.3d 1026, 1028 (9th Cir. 1997) (holding that the trial court abused its discretion in denying a motion to substitute counsel "on the strength of Gonzalez's sworn responses at the plea-taking that no one was threatening him or forcing him to plead" where the defendant "alleged that his attorney forced him to plead guilty . . . and threatened him if he did not take the plea").

The implication of Rivera-Corona's remarks regarding why he sought appointed counsel is that Marchi never suggested

---

[5]We also note that a defendant's right to appointed counsel under Federal Rule of Criminal Procedure 44 includes "defendants unable to obtain counsel for reasons other than financial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 n.5 (1972) (quoting 1966 Advisory Comm. Note to Fed. R. Crim. P. 44). Thus, even assuming that Rivera-Corona is ineligible for a CJA appointment, the court may still have a duty under Rule 44 to appoint a new attorney for him, if Rivera-Corona were unable to retain substitute counsel in Marchi's stead. We need not examine these circumstances, however, because there is no indication in the record that such circumstances pertain and, if they were to arise, they should be addressed by the district court in the first instance.

that he be appointed as counsel, or that Rivera-Corona seek new, appointed counsel, if Rivera-Corona and his family could not pay Marchi for a trial. Particularly in light of the court's failure during the Rule 11 colloquy to notify Rivera-Corona that he was entitled to counsel at trial and that counsel could be appointed for him if necessary, Rivera-Corona may have believed at the time of his plea that he had no alternative to pleading guilty other than proceeding to trial without an attorney or exposing his family to financial threats if he was unable to pay Marchi.[6] Moreover, even if Rivera-Corona's request to withdraw his plea was properly denied, the constitutional right to counsel is fully applicable to sentencing. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); *see* Fed. R. Crim. P. 44(a) ("A defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal.").

[6] Given all these defects in the district court's handling of Rivera-Corona's request, we vacate Rivera-Corona's sentence.[7] On remand, the district court must appoint counsel if

---

[6]The government concedes that the district court failed to advise Rivera-Corona during his plea colloquy that he had the right to proceed to trial and to have court-appointed counsel if necessary, but contends that the error was harmless because Rivera-Corona was informed of this right during his initial appearance and at both arraignments. The government's reliance on *United States v. Vonn*, 294 F.3d 1093 (9th Cir. 2002) is inapposite. *Vonn* applied harmless error review to a defendant's motion to set aside his conviction based on a Rule 11 violation; it does not suggest that a district court may rely on a flawed Rule 11 colloquy to deny a motion to substitute counsel.

[7]We note that Rivera-Corona would be entitled to remand even under the *Mendez-Sanchez* standard. That test requires consideration of the adequacy of the district court's inquiry into the defendant's complaint. The district court in this case made only cursory inquiries following Rivera-Corona's allegations against Marchi. The allegations raised the possibility of an irreconcilable conflict, loss of trust, or a potential financial conflict of interest. The district court, however, asked only if "there [was] anything additional?" and if "there [were] any other facts [to] consider?" The court

Rivera-Corona is financially eligible, and make appropriate factual inquiries into Rivera-Corona's allegations concerning the circumstances underlying his guilty plea if there is a formal motion to set aside the plea.

**VACATED** and **REMANDED.**

---

RAYMOND C. FISHER, Circuit Judge, concurring:

I concur in the result, but disagree with some of the reasoning offered by the majority opinion.

## I.   Sixth Amendment Right to Counsel

I agree with the majority's assessment that the Sixth Amendment right to counsel actually encompasses several rights, including the right to choice of retained counsel, the right to effective assistance of counsel and the right to self-representation. I part company, however, with the majority's conclusion that "we have no presently binding case law dictating the standards applicable in the situation in which a district court considers a defendant's motion to discharge his retained counsel and be represented by a court-appointed attorney." Maj. Op. 12155.

*Appointed to Appointed Substitution.* We have long held that, for purposes of the Sixth Amendment, denial of a defendant's motion to replace appointed counsel with appointed

---

failed to seek further clarification from Rivera-Corona, nor did it ask Marchi to confirm, deny, or explain the allegations. Consequently, the court's inquiry in this case failed to establish a "sufficient basis for reaching an informed decision." *See, e.g., United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777-78 (9th Cir. 2001) ("[I]n most circumstances a court can only ascertain the extent of a breakdown in communication by asking specific and targeted questions.").

counsel is governed by a three-part standard requiring a showing of good cause. *See, e.g.*, *United States v. Walker*, 915 F.2d 480, 482 (9th Cir. 1990) ("We consider three factors 'when reviewing the denial of a motion to substitute counsel: (1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense.' ") (quoting *United States v. Rogers*, 769 F.2d 1418, 1423 (9th Cir. 1985)), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000); *see* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.4(b), at 703 (3d ed. 2007) ("The defendant has a right to substitution only upon establishing 'good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which [could] lead . . . to an apparently unjust verdict.' ") (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981)) (alterations in original).

*Appointed/Retained to Retained Substitution.* By contrast, when a defendant seeks to replace existing counsel — whether retained or appointed — with *retained* counsel, she ordinarily need not establish good cause. *See, e.g.*, *United States v. Torres-Rodriguez*, 930 F.2d 1375, 1380 n.2 (9th Cir. 1991), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995); *see also Miller v. Blacketter*, 525 F.3d 890, 895 (9th Cir. 2008) (no need to show prejudice); *Bradley v. Henry*, 510 F.3d 1093, 1099-1100 (9th Cir. 2007) (en banc) (Clifton, J., concurring) (explaining that a defendant is generally free to replace counsel with retained counsel of choice unless the substitution "will result in an undue delay of the proceedings").

This dichotomy exists because the defendant seeking to replace appointed counsel with appointed counsel and the defendant seeking to replace existing counsel with retained counsel are relying on different aspects of the Sixth Amendment right to counsel. A defendant who moves to replace

appointed counsel with *appointed* counsel must rely on her Sixth Amendment right to effective assistance of counsel, which requires a showing of good cause — the constructive denial of counsel. *See, e.g.*, *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998) ("[I]f the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates [the defendant]'s Sixth Amendment right to effective assistance of counsel.").

On the other hand, a defendant who moves to replace existing counsel with *retained* counsel may rely on either her right to choice of counsel or her right to effective assistance of counsel. "When there is no threat of a delay in the proceedings," she may, consistent with her right to choice of counsel, freely substitute one retained counsel for another, without showing that "the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." *Torres-Rodriguez*, 930 F.2d at 1380 & n.2; *see also id.* at 1380 n.2 ("If a defendant, much in advance of trial, wishes to substitute retained counsel for an appointed one, and no delay in trial will result, . . . there is no reason to deny substitution whether or not the defendant has complaints against, or an irrevocable conflict with, his appointed counsel."). Where substitution would result in delay, the defendant may replace existing counsel with retained counsel, but, consistent with her right to effective assistance of counsel, may do so only upon a showing of good cause. *See id.* at 1380 & n.2; *see also* 3 LaFave, *supra*, § 11.4(c), at 716 ("As in the replacement of appointed counsel, if the defendant can establish that his current counsel would not be able to give him competent representation (as where a conflict of interest exists), the defendant's constitutional right to the effective assistance of counsel demands granting such continuance as is necessary to substitute new [retained] counsel.").

*Retained to Appointed Substitution.* Unlike the appointed-to-appointed and retained- or appointed-to-retained scenarios

discussed above, the question presented here is what standard applies to a defendant's motion to replace retained counsel with appointed counsel. Some courts have held that this scenario is governed by a defendant's right to choice of counsel, such that a defendant can freely discharge retained counsel and obtain appointed counsel without establishing good cause. In *People v. Ortiz*, 800 P.2d 547, 553 (Cal. 1990), for example, the California Supreme Court concluded that a trial court may not "require an indigent criminal defendant to demonstrate inadequate representation by his retained attorney, or to identify an irreconcilable conflict between them, before it will approve the defendant's timely motion to discharge his retained attorney and obtain appointed counsel." Other courts, perhaps reflecting the principle that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them," *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006), have rejected *Ortiz*'s view and concluded that replacement of retained counsel with appointed counsel *does* require a showing of good cause. The First Circuit's opinion in *United States v. Mota-Santana*, 391 F.3d 42 (1st Cir. 2004), exemplifies this view:

> In the instant case, there are two actions of the court at issue: its refusal to allow Sanchez[, retained counsel,] to withdraw and its refusal to appoint substitute counsel. Were the only issue that of the appropriateness of the court's refusal to permit withdrawal, Sanchez having been retained privately, there might be some question. As we said in *United States v. Woodard*, 291 F.3d 95, 107 (1st Cir. 2002), a defendant is not ordinarily dependent on the court's permission to replace retained counsel. But here the two actions merge, since defendant and his family ran out of funds to retain other private counsel and defendant sought court appointed counsel.

*Id.* at 46-47; *see also id.* at 47 (requiring the defendant, who had moved to replace retained counsel with appointed coun-

sel, to show that " 'the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense' ") (quoting *United States v. Allen*, 789 F.2d 90, 92 (1st Cir. 1986)).

Were we writing on a clean slate, as the majority believes we are, we would have to make a choice among the approaches exemplified in *Ortiz* and *Mota-Santana*. We are not, however, writing on a clean slate. We have already held that, for purposes of the Sixth Amendment, a motion to substitute retained counsel with appointed counsel requires a showing of good cause. *See Schell v. Witek*, 218 F.3d 1017, 1024-25 (9th Cir. 2000) (en banc); *Bland v. Cal. Dep't of Corr.*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled in part by Schell*, 218 F.3d at 1025. Those opinions are binding on us, and it is the majority's refusal to recognize them as binding precedent that causes me to write separately.

In *Bland*, we held that a motion to replace *retained* counsel with appointed counsel is governed by the same good cause standard that governs a motion to replace *appointed* counsel with appointed counsel. *See Bland*, 20 F.3d at 1475 (relying on *Walker*, 915 F.2d at 482, an appointed-to-appointed substitution case). We required the defendant to show good cause, such as an "irreconcilable conflict," to establish a right to substitution. *Id.* at 1475, 1477. Although *Bland* was a habeas case, *Schell* subsequently clarified that *Bland* described the "correct methodology for reviewing federal cases on direct appeal." *Schell*, 218 F.3d at 1024-25. Taken together, *Bland* and *Schell* hold that a motion to substitute retained counsel with appointed counsel in federal district court proceedings requires a showing of good cause.

I am not persuaded by the majority's attempts to avoid *Bland* and *Schell*. First, the majority's suggestion to the contrary notwithstanding, *Schell* did not overrule *Bland* in any respect relevant here. *See* Maj. Op. 12157. Although *Schell* overruled *Bland* as applied to *habeas* review, *Schell* expressly

and specifically *confirmed Bland*'s good cause standard as applied to "federal cases on direct appeal" — the issue presented here. *Schell*, 218 F.3d at 1024-25.

Second, the majority's conclusion that *Schell* "does not control in the current circumstances" because it addressed "substitution of *appointed* counsel" reflects a fundamental misunderstanding of *Schell*. Maj. Op. 12157 n.3. The majority apparently concludes that nothing *Schell* had to say could be binding here because *Schell* involved a motion to replace appointed counsel with appointed counsel rather than, as in this case, a motion to replace retained counsel with appointed counsel. That suggestion, as well as the majority's labeling of the relevant discussion in *Schell* as "dicta," misses the point. In *Schell*, a case involving appointed-to-appointed substitution, we went en banc to overrule *Bland*, a case involving retained-to-appointed substitution. *Schell* is therefore premised on the proposition that motions to substitute existing counsel with appointed counsel are governed by the same standard regardless of whether existing counsel is retained (as in *Bland*) or appointed (as in *Schell* and *Walker*). A proposition necessary to the holding cannot be dicta. *See, e.g.*, *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1203-04 (9th Cir. 2004). If, as the majority suggests, retained-to-appointed substitution and appointed-to-appointed substitution are governed by *different* standards, then *Bland* could not have served as precedent in *Schell*, *Schell* would not have been affected by *Bland*, *Schell* would have had no cause to address *Bland* in en banc proceedings and *Schell*'s overruling of *Bland* would have been essentially an advisory opinion. Contrary to the majority's suggestion, both *Bland* and *Schell* necessarily held that retained-to-appointed and appointed-to-appointed substitutions are governed by the same legal standard — i.e., good cause. We are bound by that holding.[1]

---

[1]As noted above, I recognize that *Schell* concerned habeas review rather than direct federal review. *Schell*'s holding that retained-to-appointed and appointed-to-appointed substitution are subject to the same legal standards, however, does not distinguish between the two and therefore is binding on direct review as well.

For purposes of the Sixth Amendment analysis, therefore, I would hold that we are bound by circuit precedent to review Rivera-Corona's motion to replace retained counsel with appointed counsel under the same good cause standard we apply to motions to substitute one appointed counsel for another. Applying that standard here, I agree with the majority that the district court failed to conduct an adequate inquiry in response to Rivera-Corona's motion. *See* Maj. Op. 12161 n.6.[2] I would vacate and remand on that basis.

I emphasize that I would apply the good cause standard because I believe we are required to do so by the doctrine of stare decisis. *See, e.g.*, *In re Tippett*, 542 F.3d 684, 691-92 (9th Cir. 2008); *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). In *Ortiz*, the California Supreme Court offered a number of strong arguments for the proposition that the replacement of retained with appointed counsel should not require a showing of good cause. Were we truly writing on a clean slate, those arguments might well prevail. In my view, however, we are constrained by precedent to apply the good cause standard here.

## II.   Statutory Rights under the Criminal Justice Act

As the majority explains, Rivera-Corona may also have a right to substitution of counsel under the Criminal Justice Act, which provides in relevant part: "If at any stage of the pro-

---

[2]On remand, the court's good cause inquiry should consider not only whether there was an irreconcilable conflict between Rivera-Corona and his attorney but also any other evidence tending to establish that proceeding with retained counsel would have resulted in ineffective assistance of counsel. In particular, as relevant here, the district court should consider whether Rivera-Corona's inability to continue paying his retained counsel established a basis for substitution. *See Ortiz*, 800 P.2d at 553 ("We are justifiably concerned about the . . . right to effective assistance of counsel when a defendant is forced to choose between proceeding to trial without an attorney or continuing to trial with an attorney originally hired to represent him but whom he no longer is able to pay.").

ceedings, including an appeal, the United States magistrate judge or the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel . . . and authorize payment . . . , as the interests of justice may dictate." 18 U.S.C. § 3006A(c). This provision "obliges the judge to continually reevaluate the need for appointed counsel as the underlying proceeding progresses." *In re Boston Herald, Inc.*, 321 F.3d 174, 193 (1st Cir. 2003).

Rivera-Corona did not explicitly raise § 3006A(c) in the district court or on appeal. Assuming that Rivera-Corona nonetheless adequately invoked the provision, I agree with the majority that the district court should have conducted an "appropriate inquiry" into Rivera-Corona's financial eligibility for mid-case appointment of counsel and an adequate analysis of whether counsel should have been appointed in the "interests of justice." 18 U.S.C. § 3006A(b)-(c); *see also United States v. Parker*, 439 F.3d 81, 92-99 (2d Cir. 2006) (discussing the "appropriate inquiry" requirement, as well as the "interests of justice" analysis). The interests of justice may dictate mid-case appointment of counsel when the defendant (or his family) is no longer able to pay retained counsel. As the majority points out, such an unpaid lawyer may, consciously or subconsciously, "resent the transformation of an agreement to represent a defendant for pay into an involuntary pro bono arrangement, and therefore seek to end the representation as expeditiously as possible." Maj. Op. 12159. On remand, therefore, the district court should also consider whether mid-case appointment of counsel is independently appropriate under the § 3006A(c), assuming Rivera-Corona seeks relief under that provision.

\* \* \*

To conclude, I part company with the majority's conclusion that, for purposes of Sixth Amendment analysis, the good cause standard does not apply to motions to substitute retained counsel with appointed counsel. I believe we are

bound by *Bland* and *Schell* to apply that standard here. I nonetheless concur in the judgment, because the district court failed to conduct an adequate inquiry, as required by *Bland* and *Schell*, in response to Rivera-Corona's motion to replace retained counsel with appointed counsel.