NGUYEN, Circuit Judge,
dissenting in part:
While represented by competent retained counsel, Manuel Yepiz sent a pro se letter to the district court. Because the court’s local rules prohibit, among other things, represented parties from communi- *1081 eating with the court pro se, his letter was not filed. Instead, the court returned -the letter to Yepiz’s counsel along with notice of the reason for the rejection. Importantly, Yepiz’s letter doesn’t suggest -any dissatisfaction with his attorney’s representation, only with its cost. Yet the majority holds that the court’s failure to consider the letter is structural error requiring automatic reversal of Yepiz’s conviction. I respectfully dissent.
The majority’s ruling invalidates not only well-established local rules in the Central District of California, but similar rules in every district in the Ninth Circuit More troubling, however, is the majority’s refusal to engage in harmless error analysis. A request for appointed counsel implicates the Sixth Amendment’s guarantee of effective assistance, not choice, of counsel, regardless, of whether the . attorney whom the criminal defendant seeks to replace was retained or appointed. Consistent with other effective-assistance cases, Yepiz’s conviction should be affirmed unless he can show prejudice. There was no. such showing here. Indeed, counsel continued to represent Yepiz competently throughout the extensive proceedings in this case, including pretrial hearings, trial, and sentencing. By finding structural error and vacating the conviction, the majority brings us seriously out of step with the Supreme Court’s Sixth Amendment jurisprudence.
I.
I agree with the majority that the Sixth Amendment claim turns on Yepiz’s April 2006 handwritten letter to the district court regarding his retained attorney, Nicolas Estrada.[1] In the letter, Yepiz did.not express concern about. Estrada’s competence or any other aspect of his performance. To the contrary, the letter was premised entirely on. “financial differences” that developed between Yepiz and Estrada. Yepiz wrote that he “need[ed] a -Panel attorney” because Estrada had only recently informed him of the representation’s “financial cost.”
The court “rejected” the letter for filing, and returned it to . counsel for failure to comply with the district court’s local, rules. Those rules prohibit a party from “writing letters to .. t or otherwise communicating with a judge in a pending, matter unless opposing counsel is present” and require “[a]ll matters [to]-be called to-a judge’s attention by appropriate application or motion.” C.D. Cal. L.R. 83-2.11 (2006). The rules also prohibit a represented party from acting pro se. C.D. Cal. L.R. 83-2.9.1 (2006). It appears that the letter may have been bounced by court staff without the judge’s involvement.[2] At a later hearing in *1082 which Yepiz recounted the letter, the. district judge gave no indication that he had seen it.
The district court sent a notice of discrepancy to Estrada informing him that filing was rejected, along with a copy of the letter. The electronic docket entry noted' the reason for the rejection as “[parties should not write letter [sic] to judge.” In short, the district court promptly alerted Estrada that the letter was not filed and gave him a copy of it so that he would know the exact nature of his client’s complaint. It appears that Estrada discussed the matter with his client because, at a subsequent hearing, Yepiz stated that he had a copy of the “returned” letter “signed by” the court (presumably referring to the notice of discrepancy).
Yet for three months after filing was rejected, neither Yepiz nor defense counsel raised any concerns. Estrada continued to represent Yepiz, filing a reply in support of his motion to suppress wiretap evidence and appearing alongside him at the hearing. Throughout that time Estrada never filed a motion to withdraw or a request for substitution.
II.
The majority acknowledges that the letter was neither filed nor considered on the merits. It concludes, however, that because the district court presented “no clear explanation as to why Yepiz’s letter was rejected” to Yepiz or to this attorney, the local rules “served to arbitrarily deny Yep-iz’s constitutional rights.” Op. at 1079. I disagree.
For one thing, the docket entry plainly states that the letter was rejected “based on: [p]arties should not write letter [sic] to judge.” Estrada received this notice. See C.D. Cal. L.R. 5-4.1.4(4). Moreover, because “familiarity with [the] Local Rules [is] a prerequisite to admission to practice in the Central District,” Moore v. La Habra Relocations, Inc., 501 F.Supp.2d 1278, 1279 (C.D. Cal. 2007) (citing C.D. Cal. L.R. 83-2.2.2 (2006)), Estrada was expected to know that those rules prohibited represented parties from writing letters directly to the judge. He certainly would have known that the Federal Rules of Civil Procedure require motions to be served on opposing counsel. Fed. R. Civ. P. 5(a)(1)(D).
Once Estrada learned that his client might want to discharge him, he had a duty to promptly discuss the issue with Yepiz and, if Yepiz indeed had that intent, to honor it. An attorney has an ethical obligation to seek substitution or withdrawal if his client wants the representation to end. See, e.g., Fracasse v. Brent, 6 Cal.3d 784, 790, 100 Cal.Rptr. 885, 494 P.2d 9 (1972) (“[T]he client’s power to discharge an attorney, with or without cause, is absolute.” (citation omitted)); see also Cal. Bus. & Prof. Code § 6068(m) (requiring attorneys “to keep clients reasonably informed of significant developments”); Cal. R. of Prof’l Conduct, R. 3-500 (same).
“[T]he attorney is in the best position to determine when a conflict exists and so ‘defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem.’ ” United States v. Elliot, 463 F.3d 858, 866 (9th Cir. 2006) (quoting Holloway v. Arkansas, 435 U.S. 475, 485-86, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). Attorneys routinely bring their clients’ requests to discharge counsel or potential conflicts to the court’s attention, including in the cases relied upon by Yepiz and the majority. E.g., United States v. Brown, 785 F.3d 1337, 1341-42 (9th Cir. 2015) (“[Defense counsel] advised the court [in a written motion] that Brown ‘desire[d] counsel to withdraw from representing him..,’ ”); United States v. Rivera-Corona, 618 F.3d 976, 977-78 (2010) (“[Retained counsel] *1083 moved to withdraw [after his client - expressed a loss of faith in him] and requested that new counsel be appointed.”); Miller v. Blacketter, 525 F.3d 890, 892 (9th Cir. 2008) (filing withdrawal motion on the day after the defendant “left a message on [counsel’s] home answering machine stating that he was no longer comfortable with her representation and ... wanted a new lawyer”). There is no reason to think Estrada would not have done the same thing here if Yepiz remained intent on firing him.
For all we know, Yepiz and Estrada may have temporarily resolved their financial differences after Yepiz’s letter was rejected. If so, then we must “presume that counsel [continued] to execute his professional and ethical duty to zealously represent his client, notwithstanding the fee dispute.” United States v. O’Neil, 118 F.3d 65, 71 (2d Cir. 1997). We should assume that Estrada fulfilled his duties given the “ ‘strong presumption’ that an attorney’s conduct was professionally competent.” Frazer v. United States, 18 F.3d 778, 786 (9th Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Nothing in Yepiz’s April 2006 letter suggested that Estrada was unwilling to end the representation or that there was any other-'conflict that might have warranted the district court’s intrusion into the attorney-client relationship. In Yepiz’s next two letters to the district court, written three months later, he did not even mention the fee issue. By vacating Yepiz’s conviction without knowing why he never renewed his request as a formal substitution motion, the majority flips the presumption that Estrada was competent on its head.[3]
Today’s decision will place tremendous strain on our already overburdened district courts. The majority’s holding means that district courts can’t enforce local rules prohibiting represented parties from writing pro se letters to the judge. Such rules exist in every district court throughout the Ninth Circuit. See D. Alaska Civ. R. 11.1(a)(1)(8)[A]; D. Ariz. Civ. R. 83.3(c)(2); N.D. Cal. Civ. R. 11-4(c); S.D. Cal. Civ. R. 83.9; D. Guam Gen. R. 19.1(a); D. Haw. R. 83.6(a); D. Idaho Civ. R. 83.6(a)(2); D. Nev. R. IA 11-6 (a); D. N. Mar. I. Civ. R. 83.5(g)(1); D. Or. Civ. R. 83-9(b); E.D. Wash. R. 83.2(d)(2); W.D. Wash. Civ. R. 83.2(b)(4),[4] In fact, we enforce similar rules in our own court, see, e.g., United States v. Noriega-Perez, 467 Fed.Appx. 698, 703 (9th Cir. 2012); United States v. Ortiz-Martinez, 593 Fed.Appx. 649, 650 (9th Cir.) (rejecting pro se filing seeking new counsel), cert. denied, — U.S. —, 135 S.Ct. 2912, 192 L.Ed.2d 942 (2015), as do other circuits, see, e.g., United States v. Hunter, 770 F.3d 740, 746 (8th Cir. 2014) (“It has long been Eighth Circuit policy ‘that when a party is represented by counsel, we will not accept pro se briefs for *1084 filing.’ ” (quoting United States v. Payton, 918 F.2d 54, 56 n.2 (8th Cir. 1990))).
Until today, we have always afforded district courts great discretion in enforcing these rules because “[a] criminal defendant does' not have an absolute right to both self-representation and the assistance of counsel.” United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir. 1981). Of course, district courts can’t turn a blind eye to conflicts between a criminal defendant and defense counsel under the guise of procedure. When the court is aware of a conflict that potentially could affect a defense counsel’s representation, it has a duty to inquire further. E.g., Garcia v. Bunnell, 33 F.3d 1193, 1199 (9th Cir. 1994). But “not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights.” Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc) (citing Morris v. Slappy, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (rejecting “the claim that the Sixth Amendment guarantees a ‘meaningful relationship’ between an accused and his counsel”)).
Yepiz expressed no concern about Estrada’s performance. He did not suggest that counsel’s representation would suffer as a consequence of their financial dispute. I agree that because he asked for appointed counsel, the more prudent course would halve been for the district court to exercise its discretion and take up his complaint. But the failure to do so under these circumstances is not per se reversible error. By concluding that structural error occurs when a district court fails to inquire into a single pro se letter that is returned to counsel, the majority effectively requires district judges to review and entertain all pro se filings submitted by every single represented criminal defendant. This is no small task. For many of our district courts that handle massive criminal dockets, receiving pro se letters is a routine matter. Some defendants in custody are prolific letter writers and, without counsel’s help, their messages may be prolix and inscrutable. District courts, no longer safe to rely on the defense -bar’s professionalism in raising client concerns, will now be pressed to hold hearings whenever criminal defendants write to them on differences with their counsel, regardless of how seemingly minor.
III.
The majority’s assignment of error to the district court’s routine handling of a pro se communication wouldn’t be nearly so pernicious if not for its failure to assess harmlessness. Guided by our precedents— which I believe were wrongly decided—the majority holds that when a district court erroneously denies a motion to substitute retained counsel with appointed counsel, it commits structural error. The mistake in this approach stems from confusion about the right at issue.
“The Sixth Amendment’s right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one’s own counsel.” Rivera-Corona, 618 F.3d at 979 (quoting Daniels v. Lafler, 501 F.3d 735, 738 (6th Cir. 2007)). These rights are distinct because they arise from different sources. The right to effective counsel is derived from the Due Process Clause’s fair trial guarantee and incorporated into the Sixth Amendment based on “our perception that representation by counsel ‘is critical to the ability of the adversarial system to produce just results.’ ” United States v. Gonzalez-Lopez, 548 U.S. 140, 147, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (quoting Strickland, 466 U.S. at 685, 104 S.Ct. 2052). Because the limits of this right are also derived from the goal of a fair—“not mistake-free”—trial, “a violation of the Sixth Amendment right to effective representa *1085 tion is not ‘complete’ until the defendant is prejudiced.” Id. (citing Strickland, 466 U.S. at 685, 104 S.Ct. 2052).
“The right to select counsel of one’s choice, by contrast, has never been derived from the Sixth Amendment’s purpose of ensuring a fair trial. It has been regarded as the root meaning of the constitutional guarantee.” Id. at 147-48, 126 S.Ct. 2557 (footnote and citations omitted). “Deprivation of the right is ‘complete’ when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.” Id. at 148, 126 S.Ct. 2557. Although the right to choice of counsel is subject to qualifications, see Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the improper denial of that right, including the right not to have counsel, see Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), is structural error subject to automatic reversal. Gonzalez-Lopez, 548 U.S. at 152, 126 S.Ct. 2557; Frantz v. Hazey, 533 F.3d 724, 734 (9th Cir. 2008).
Here, Yepiz did not seek to retain a particular lawyer or proceed pro se. He asked the district court to appoint counsel. His request was grounded not in the Sixth Amendment’s. right to counsel of choice but rather in its “right to the effective assistance of counsel, the violation of which generally requires a defendant to establish prejudice.” Gonzalez-Lopez, 548 U.S. at 146, 126 S.Ct. 2557; see Wheat, 486 U.S. at 159, 108 S.Ct. 1692 0‘[W]hile the right to select and be represented by one’s preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.”). The Supreme Court has cautioned us not “to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.” Gonzalez-Lopez, 548 U.S. at 148, 126 S.Ct. 2557.
In Rivera-Corona, the panel cited Bland v. California Department of Corrections, 20 F.3d 1469, 1479 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir. 2000) (en banc), for the proposition that a defendant’s request to substitute appointed counsel in place of a retained attorney “implicate^] the qualified right to choice of counsel.” 618 F.3d at 981. I don’t read Bland as holding that, let alone “unequivocally” so. Rivera-Corona, 618 F.3d at 981. At issue was the “right to discharge counsel,” Bland, 20 F.3d at 1472 (emphasis added), not the right to have new counsel appointed. Bland’s retained attorney moved' unsuccessfully “to be relieved as counsel.” Id. at 1475 (emphasis omitted). We affirmed habeas relief based on the trial court’s denial of that motion. Id. at 1472. Although Bland’s retained attorney also expressed his client’s wish to have new counsel appointed, id. at 1475, that request wasn’t at issue because the trial court ultimately appointed counsel when the retained attorney failed to appear at sentencing. Id.
Admittedly, we inconsistently framed the issue as both the right to choice of counsel (which wouldn’t require a showing of prejudice) and the right to effective assistance (which would). But it made no difference how Bland’s right was characterized because he “established the requisite prejudice” in any event. Id. at 1479. In pointing out that “the Sixth Amendment ... protects [Bland’s] qualified right to obtain retained counsel of his choice,” we “assume[d] Bland was not indigent.” Id. at 1477 (emphasis added).
*1086 As we explained in Schell, the right to choice of counsel is not implicated by an indigent defendant’s request for appointed counsel: “The qualified right of choice of counsel applies only to persons who can afford to retain counsel.” 218 F.3d at 1025 (emphasis added). In Gonzalez-Lopez, the Supreme Court echoed this principle, stating that “the right to counsel of choice does not extend to defendants who require counsel to be appointed for them.” 548 U.S. at 151, 126 S.Ct. 2557.
The error in Riverar-Corona was compounded in Brown, which held that the erroneous denial of a motion to substitute retained counsel with appointed counsel “is a structural error, requiring that convictions be vacated even without a showing of prejudice.” 785 F.3d at 1350 (citing Gonzalez-Lopez, 548 U.S. at 150, 126 S.Ct, 2557). The panel acknowledged “that it is not, strictly speaking, correct to say that the defendant in Riverar-Corona, or [Brown], was entitled to, or seeking, counsel of choice.” Id. at 1344. Nevertheless, the panel concluded that the district courts were “really deciding two issues. The first, whether the defendant may discharge the attorney whom he retained, implicates the Sixth Amendment right to counsel of choice.... [A]t the same time, [the courts were] also considering a request for appointment of counsel.” Id. at 1344-45, Since the first issue involves a right that if violated requires automatic reversal, Brown concluded that the ultimate decision was also subject to automatic reversal if erroneous. Id. at 1350.
Whatever the logic of that proposition in general, it makes no sense to apply it when the substitution request is for purely financial reasons. The defendant doesn’t want to fire his retained counsel independently of having new counsel appointed. The former is incidental to the latter. See United States v. Mota-Santana, 391 F.3d 42, 47 (1st Cir. 2004) (“[T]he two [analyses] merge, since defendant and his family ran out of funds to retain other private counsel and defendant sought court appointed counsel.”). Here, had the district court found Yepiz indigent and appointed Estrada to continue representing him at public expense, the majority presumably would find no error. See C.D. Cal. Gen. Order 13-09 (allowing for appointment of counsel not on Criminal Justice Act Panel to ensure continuity of representation and preserve the interests of economy). Then why find per se reversible error when the consequence of the court’s purported error was the continued representation by Estrada? The majority doesn’t say.
Before Rivera-Corona and Brown led us astray, we treated motions to substitute retained counsel with appointed counsel under the standard for appointing new counsel because that was the crux of the request. Bland held that “[w]hen reviewing the denial of a motion to substitute [retained with appointed] counsel for abuse of discretion, we consider ... three factors: ‘(1) timeliness of the motion; .(2) adequacy of the court’s inquiry into the defendant’s complaint; and (3) whether the conflict between the defendant and his' attorney was so great that it resulted in a total lack of communication preventing an adequate defense.’ ” 20 F.3d at 1475 (quoting United States v. Walker, 915 F.2d 480, 482 (9th Cir. 1990)). Schell, though overruling Bland’s, application in habeas cases as insufficiently deferential, confirmed that the standard applied in Bland “is the correct methodology for reviewing federal cases on direct appeal.” 218 F.3d at 1025 (citing Walker). Yet Rivera-Corona wrongly held that “the extent-of-conflict review is inappropriate” when a defendant seeks to replace retained with appointed counsel. 618 F.3d at 981. But see Martel v. Clair, 656 U.S. 648, 132 S.Ct. 1276, 1287, 182 L.Ed.2d 135 (2012) (explaining that review of substitution motions “generally include[s]” factors such as “the timeliness *1087 of the motion; the adequacy of the district court’s inquiry into the defendant’s complaint; and the asserted cause for that complaint, including the.extent of the conflict or breakdown in communication between lawyer and client (and the client’s own responsibility, if any, for that conflict)”). See generally Rivera-Corona, 618 F.3d at 983-87 (Fisher, J., disagreeing that Bland and Schell were not controlling but concurring in the result). By wholly conflating two distinct rights—the right to counsel of choice and the right to effective counsel—Rivera-Corona and Brown forged structural error from harmless mistake.
IV.
This case illustrates why a conviction shouldn’t be set aside when the district court erroneously denies a request to substitute retained with appointed counsel absent a showing of prejudice. Midway through trial, the district court held a hearing to discuss Yepiz’s most recent complaints about Estrada. The court made specific findings that Estrada had continued throughout the proceedings to competently represent Yepiz, that he had “participated in the trial,” “made objections ... at the appropriate time,” and “properly cross-examined witnesses that ha[d] anything to say that relate[d] to [Yepiz].” Critically, the court found that Yepiz and Estrada “[could] continue to work out” defense strategy. None of these findings is consistent with “the conflict between the defendant and his attorney [being] so great that it resulted in a total lack of communication preventing an adequate defense.” Bland, 20 F.3d at 1475. In other words, there is no evidence of prejudice.
I respectfully dissent.

. Yepiz sent four letters to the court regarding Estrada. The first, at issue here, was sent in April 2006. Yepiz followed up with two more in July, and a fourth letter in September after trial had begun. I agree with-the majority that the denial of the July and September requests for substitution of counsel were justified. See, e.g., United States v. Garcia, 924 F.2d 925, 926 (9th Cir. 1991) ("We have consistently held that a district court has broad discretion to deny a motion for substitution made on the eve of trial if the substitution would require a continuance." (citing United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986))).

. Federal Rule of Civil Procedure 5(d)(4) prohibits the clerk from refusing to file a paper solely for noncompliance with a local rule, but such orders can be entered at the direction of a judicial officer. E.g., Christian v. Mattel, Inc., 286 F.3d 1118, 1129 (9th Cir. 2002); see Fed. R. Civ. P. 5(e) advisory committee’s note to 1991 amendment ("The enforcement of these rules and of the local rules is a role for a judicial officer.”). It’s unclear whether Judge Walter saw’ the letter and rejected the filing, he delegated that duty, or, if his usual practice was to set a hearing, a clerk inadvertently failed to comply. That Judge Walter’s signature is on the notice of discrepancy doesn’t definitively tell us the answer as most judges have signature stamps for their courtroom deputy’s use.

. As stated, Yepiz knew that his letter was rejected. But the majority appears to assume that Estrada failed to notify Yepiz in a timely manner or refused to honor a request to withdraw. Even if true, Yepiz had a remedy: he could allege ineffective assistance of counsel. Of course, we usually do not consider such claims on direct appeal because the record is inadequate to evaluate them. See, e.g., United States v. Rahman, 642 F.3d 1257, 1259 (9th Cir. 2011). But that’s all the more reason why we shouldn’t disturb the conviction in these proceedings.

. The Eastern District of California does not have a specific rule except for capital habeas petitioners, E.D. Cal. R. 191(c), but its rules cite "letters to the Court not suitable for filing” as an example of "received” documents that are “not ,.. part of the official record in the action,” E.D. Cal. R. 101. The District of Montana implies , such a rule for represented criminal defendants: "When the right to counsel no longer applies in this court, pro se filings may not be dismissed or stricken on the grounds that the filer was represented by counsel.” D. Mont. Crim. R. 44.1.